STATE v. OLIVER SMITH.[1]

January 30, 1901.

Nos. 12,488—(243).

**Swindling—Sleight of Hand or Trick.**

> G. S. 1894, § 6595, embraces and was intended to provide for the punishment of swindling by means of sleight of hand and tricks as well as by means of a fraudulent mechanical device or false token.

**Conviction Sustained.**

> Evidence examined, and *held* to make out a case of swindling, within the meaning of the statute.

Defendant was convicted in the district court for Ramsey county, Brill, J., of the crime of swindling. At his request the court reported the case and certified to the supreme court for its determination the question stated in the opinion. Affirmed.

*Thomas R. Kane,* County Attorney, for plaintiff.

*Cannon & Donnelly,* for defendant.

BROWN, J.

Defendant was convicted in the district court of Ramsey county, under G. S. 1894, § 6595, of the crime of swindling; and the cause is certified to this court to determine the question, is the evidence sufficient to make out an offense of swindling, within the meaning of the statute? The statute is as follows:

"Whoever, by the means of three-card monte, so called, or of any other form or device, sleight of hand or other means whatever, by use of cards or instruments of like character, or by any other instrument, trick, or device, obtains from another person any money or other property of any description, shall be deemed guilty of the crime of swindling * * *."

The indictment charges that defendant, at the time and place stated therein,

"Did, by the use and means of sleight of hand and trick, known as the 'short-change trick,' a more particular description of which

[1] Reported in 85 N. W. 12.

is to this grand jury unknown, from one Roy E. Hilton, by the use and means of said sleight of hand and trick, * * * wrongfully, unlawfully, * * * fraudulently, deceitfully and feloniously receive, have and obtain into his * * * possession the sum of ten dollars, lawful money of the United States * * * the personal property of said Roy E. Hilton. * *· *"

At the time in question the complaining witness was engaged as a ticket seller for the State Agricultural Society, and was acting in that capacity when swindled as charged in the indictment. The manner and means by which defendant obtained the money from him is best told by his testimony, which is in part as follows:

"Q. Now, on that day did you see this defendant, Oliver Smith? A. Yes, sir. Q. When? About what time? A. I cannot remember it exactly, but it was about a quarter of two, to the best of my belief. Q. And where did you see him? A. I saw him at my ticket window. Q. What did he do there? A. Why, what he did was this: He came up and wanted one ticket, and gave me a $20 bill; and I took the $20 bill and had it in my hand, and put down a ticket and $19.50 in change; and, of course, I had the $20 bill in my hand, just preparatory to placing it away; and he says, 'Hold on; I only gave you $1.' And I says, 'No; it was a $20 bill,' and I showed it to him. And he says, 'Well, give me my $20. Here is a one dollar bill. I don't care to carry so much change.' And it was right at the busiest time of the day, and I was hurried, of course, and so I gave him the $20 back; and then he just shoved $10 of the $19.50 change up nearer towards me on the board before the window, and says, 'Give me a $10 bill for my change here.' And I hesitated a moment, and I knew there was something wrong, but I didn't know just what; and he says, 'Here's my money. Give me a $10 bill.' And I gave him the $10 bill, and he went off. That is the story. Q. Well, did he hand out— When he gave you this $20 bill; what did he do about the change that you had given him? A. The change was placed on the board right under the window, of course,—under the netting, and he took it and drew it a little nearer, right next to him, as if he was going to take it, and just drew it nearer to him, but did not take it off. * * * Q. Then, after that, when you returned to him his $20, what, if anything, did he do with the money that remained on the window? That is, what did he do with it? Did he take hold of it? What use of it did he make? A. He simply shoved over $10, and says, 'Give me a $10 bill for the change here,' or words to that effect. I can't repeat the exact words. * * * Q. And during all this time where was the $19.50? A. The $19.50 was on the board before me, and in front of him. Q. And did he do anything else with this money which laid on the board

before you, than you have already testified? That is, what use did he make of it with his hands,—shuffle it, or anything of the kind? That is what I want to get at. A. All I can say is that he shoved it forward,—the $10 in change,—and demanded the $10 bill, and said, 'Here, give me a $10 bill for my $10 in change.' * * * Q. Now, how did you discover in a minute and a half after he had gone that you were short the amount of money you have indicated. A. Because I knew he worked me. Q. Is that the only way? A. That is the only way I discovered in a minute and a half after; yes, sir. Q. Because you felt at once that he had worked you? A. I knew it. Q. How did you know it? A. Well, I simply knew it. Q. Now, you say you thought there was something wrong with him, as you have just stated a few moments ago, when he asked for this $20 bill back and gave you the change. You thought there was something wrong with it. Is that correct? A. Yes, sir; I knew it. Q. If you thought there was something wrong, why did you give up the money? A. Why, that is what I have been wondering. Q. That is what you have been wondering ever since. And you have told us all that the man did do, have you? A. I have told my story."

The evidence returned with the record shows that defendant was engaged in the "short-change trick" very extensively at this time. He victimized two other ticket sellers of the Agricultural Society on the same day, and attempted the same upon a third, but failed.

The only question certified to this court is whether this evidence shows the commission of a crime, within the meaning and purview of the statute above quoted.

It is contended by counsel for defendant that the evidence falls short of showing a device or trick by means of which complainant was deceived or induced to part with his money, and that no crime other than petit larceny is made out. The question is an important one, not only to the defendant, but to the state as well. We have given it careful attention, and conclude that the statute is broad enough and was intended to cover just such frauds, cheats, and swindles as the evidence discloses in this case. Statutes of the tenor and effect of that here under consideration have been very broadly construed by the courts of other states. Such statutes are intended to reach cheats and swindlers of all kinds and description, and the language and words thereof are construed to give such effect and scope as their natural meaning imports.

Morton v. People, 47 Ill. 468, 470; Maxwell v. People, 158 Ill. 248, 41 N. E. 995; Van Eyck v. People, 178 Ill. 199, 52 N. E. 852; State v. Quinn, 47 Iowa, 368; People v. Frigerio, 107 Cal. 151, 40 Pac. 107.

This court did not, in the case of State v. Wilson, 72 Minn. 522, 75 N. W. 715, by the statement therein that, to constitute the crime of swindling under this statute, the property must have been obtained by some false token or device other than mere words, intend to hold, or be understood as holding, that a mechanical contrivance was necessary to be employed to constitute a device, within the meaning of the law, or to eliminate from the statute that provision relating to tricks and sleight of hand. Property may be taken or obtained from another by means of a trick or sleight of hand, coupled with the use of words and actions, and the person so obtaining it be guilty of swindling, under the statute, even though no device, in the sense of a mechanical contrivance, be used at all. The trick or sleight of hand may amount to a device, within the meaning of the law, depending, of course, upon the character of the trick, and the methods employed to effect its purpose. Webster defines the word "device" as follows: "That which is devised or formed by design; a contrivance; a project; a scheme,—often a scheme to deceive; a stratagem; an artifice." The word "trick" is defined by the same authority as "a sly, dexterous, ingenious procedure fitted to puzzle or amuse." The word is classed as a synonym with strategy, wile, fraud, cheat, deception, delusion. The language of the opinion in the case of State v. Wilson, supra, must be construed with reference to the means shown to have been employed in that case. There a padlock with a secret spring was the device made use of to deceive the victim.

In this case the defendant made use of fraudulent representations, stratagem, and a scheme to deceive complainant; and this, within the meaning of the statute, amounts to a device, sleight of hand, or trick. The fact that the evidence would justify a conviction for larceny does not render the case any the less swindling. People v. Frigerio, supra. The evidence clearly shows that defendant had adopted the method disclosed by the evidence as a fraudulent and deceitful scheme and trick feloniously to obtain the money of others, and by his sly, artful, and cunning ac-

tions induced complainant on the occasion in question to rely upon the apparent fairness and honesty of his purpose. We are quite clear that the offense made out by the evidence comes fully within that charged in the indictment and contemplated by the statute.

We therefore answer the question certified to us, viz. "Is the evidence sufficient to make out a case of swindling under the provision of G. S. 1894, § 6595?" in the affirmative, and remand the cause to the court below for further proceedings.