THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* C. E. DEPEW, Plaintiff in Error.

*Opinion filed December 15, 1908—Rehearing denied Feb. 5, 1909.*

1. BILLS OF PARTICULARS—*bill of particulars does not affect the indictment.* The object of the bill of particulars is not to make a substantive charge against the defendant but to limit the evidence to the transactions set out in the bill, but the indictment, which is the charge upon which the defendant is tried, can neither be helped nor hurt by the bill of particulars.

2. SAME—*the bill of particulars need not set out the evidence.* The effect of a bill of particulars is to limit the evidence to the transactions set out in the bill; but the evidence to be produced by the People need not be set out, and any competent evidence tending to establish the transactions set forth in the bill is admissible.

3. ARREST OF JUDGMENT—*motion in arrest does not raise question of sufficiency of bill of particulars.* A motion in arrest of judgment does not raise the question of the sufficiency of the bill of particulars nor the question of a variance between the evidence and the bill, as the question of variance arises upon the evidence and can only be shown by a bill of exceptions.

4. CONFIDENCE GAME—*form of transaction is immaterial if it is a swindling operation.* The confidence game is any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler, and the form of the transaction is immaterial if it is, in fact, a swindling operation.

5. SAME—*fact that contract is legally binding is no defense if it was designed to perpetrate a fraud.* The fact that a contract legally binding was executed as a part of the transaction charged to be a confidence game is no defense to the charge if the contract was not made in good faith but as a means of perpetrating a fraud and taking advantage of the victim's confidence to obtain his money.

6. SAME—*whether transaction was carried on in good faith is a question for the jury.* In a prosecution for the confidence game the question whether the transaction was carried on by the defendant in good faith is for the jury, which may consider the evidence of his conversations with the victim, his deception with regard to transmitting the money by mail to defendant's alleged company, his relation to such company, the extent and character of the business of the company and its ability to carry out the contract.

7. Same—*what evidence is incompetent.* In a prosecution for the confidence game, evidence by a post-office inspector that about five years before the trial, when the defendant was in the novelty business under the name of a certain company, the witness ·had twice investigated a complaint of the post-office department against such company, is incompetent, but its admission is harmless if the verdict of the jury is amply justified by other undisputed evidence.

8. Instructions—*it is not error to assume an admitted or established fact.* It is not error to assume, in an instruction, an admitted fact or one that is established by undisputed evidence.

9. Same—*People not required to prove guilt beyond possibility of doubt.* In a criminal case it is proper to give an instruction holding that if the defendant has been proved guilty beyond a reasonable doubt the jury should not acquit him because it was possible that he was innocent.

Writ of Error to the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

John G. Friedmeyer, and C. J. Christopher, for plaintiff in error.

W. H. Stead, Attorney General, and Frank L. Hatch, State's Att'y, (Joel C. Fitch, of counsel,) for the People.

Mr. Justice Dunn delivered the opinion of the court:

The defendant was convicted of obtaining $25 of P. P. Coutrakon by means of the confidence game, and has sued out a writ of error to reverse the judgment.

Coutrakon is a Greek, who has lived in this country about ten years, and in April, 1908, was living in Springfield, as he had been for the previous eighteen months, working for his brother, who was in the candy business. He saw in a newspaper, and answered, the following advertisement:

"*Wanted*—Three young men; fair education; 21 to 35 years; city and State; call on retail trade, sell and collect; experience unnecessary if willing to start $9 and expenses; ·good opportunity for promotion; reference and $25 cash bond required.—Address John Z. Allen, Gen. Delivery, Springfield."

Three days later he received a reply from the American Specialty Company of Indianapolis, Indiana, saying that Mr. Depew would be in Springfield in a day or so; that he was the representative of the company to whom the selection of its men was left entirely and by whose decision it would abide and keep his contract to the letter, and that while not guaranteeing a large salary at beginning it offered a fine opportunity for advancement, and one should soon make $15 to $25 per week and expenses. On May 3, 1908, ten days after the receipt of this letter, Coutrakon received a postal card from Depew requesting Coutrakon to call on him at the Hotel Silas, in Springfield, regarding the position of calling on the retail trade. Upon going to the hotel Coutrakon was taken by Depew to the latter's room, where he had chewing gum, razors, watches and fountain pens. He explained the method of transacting their business, which was the selling of these goods and other novelties and the distribution of prizes in connection with the sales. He told Coutrakon it was a good proposition, and that his salary would be $9 a week and his expenses for the first two weeks and would be increased to $12 or $15 a week. Coutrakon was to collect and remit the balance, after deducting his salary and expenses, and if his collections were insufficient for this purpose the company would pay him the difference. However, a cash deposit of $25 was required of Coutrakon, which he hesitated about making. Two or three further interviews took place during that day and the next, and Coutrakon consulted his brother about the matter. He proposed to Depew to give a bond for $500, but Depew told him if he wanted the agency he would have to make the cash deposit, which Depew told him was to be sent to the company and would be returned when he quit the company and delivered up his sample case. Depew agreed to furnish Coutrakon a mileage book and Coutrakon then finally agreed to the deposit, and a contract

was executed in duplicate, by which Coutrakon entered the service of the American Specialty Company for the term of twelve weeks as traveling representative and collector, to secure representatives for the sale of the company's goods. Coutrakon had a five-dollar bill and a twenty-dollar gold piece. At Depew's suggestion the gold was changed into bills. Both parties went to the post-office, and there Coutrakon handed Depew five five-dollar bills, which Depew, in Coutrakon's presence, as the latter supposed, placed, together with one copy of the contract, in an envelope stamped and addressed to the American Specialty Company. The package was then registered in Coutrakon's name and mailed. As they left the post-office Coutrakon asked Depew if he would certainly give him his mileage book, and Depew replied that he would not but Coutrakon must pay his own expenses. After making an appointment to meet a little later, they separated. Coutrakon went back to the post-office, gave back the registry receipt which he had and received back the letter, which, upon examination later, was found to contain only three sheets of blank paper. Depew was arrested the same evening. On his way to the police station he handed to a companion who was with him, some letters, which were taken by the police. One from Depew, addressed to "Dear Carter," stated that the writer had landed one to-day and expected to land another to-morrow, and if he landed the fellow to-morrow he could send Carter $15, otherwise he would send him $10.

The American Specialty Company was incorporated in Indiana on November 26, 1907. There were but three stockholders, of whom Clarence E. Depew was one. William T. Fletcher, a post-office inspector of Indianapolis, visited the place of business of the American Specialty Company in the latter part of May, 1908. It was a room about 15 by 40 feet, in charge of a young lady, with the stock, consisting of chewing gum, dishes, trinkets and novelties, spread out on a counter. The value of the property

237 — 37

.did not exceed $25. Three days later the witness again went to the place and found it vacant.

A bill of particulars was filed by the State's attorney, and it is insisted that the facts stated in the bill of particulars and shown by the evidence do not constitute the confidence game. The indictment, and not the bill of particulars, is the charge upon which the defendant is tried. Where an indictment is so general in its terms as not to fully apprise the defendant of the precise charge made against him, he may call upon the prosecution for a more detailed and particular statement of the facts on which the charge is based. The object of the bill of particulars is to give the defendant notice of the specific charge against him and to inform him of the particular transactions brought in question, so that he may be prepared to make his defense. (*McDonald* v. *People,* 126 Ill. 150; *Cooke* v. *People,* 231 id. 9.) Its effect, therefore, is to limit the evidence to the transactions set out in the bill of particulars. But the prosecution is not required to set out in the bill of particulars all the evidence it will produce in support of the charge. Any evidence tending to establish the transaction set forth in the bill of particulars is admissible. If the bill of particulars had not been sufficiently specific the defendant might have demanded one more definite and certain. If the evidence offered was not limited to the transaction mentioned in the bill of particulars he might have objected to it on that ground. But his motion in arrest of judgment does not raise the question of the sufficiency of the bill of particulars. The object of such a bill is not to make a substantive charge against the defendant, but to limit the evidence which may be introduced under the indictment to the particular transactions. The indictment, which is the charge, can neither be helped nor hurt by the bill of particulars. Nor did the motion in arrest of judgment raise the question of a variance between the evidence and the bill of particulars. Such

motion raises only questions appearing on the face of the record, while the question of variance arises upon the evidence and can only be shown by a bill of exceptions.

The confidence game is defined as any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. (*Maxwell* v. *People,* 158 Ill. 248; *DuBois* v. *People,* 200 id. 157; *Hughes* v. *People,* 223 id. 417.) The fact that the transaction was made to assume the form of a legitimate contract is not material, if, in fact, it was a swindling operation. (*Hughes* v. *People, supra; Chilson* v. *People,* 224 Ill. 535.) Coutrakon parted with his money on account of his confidence in Depew, inspired by the latter's representations as to the advantages Coutrakon would derive from the contract. Whether the transaction was carried on by Depew in good faith or was a swindling operation was the question submitted to the jury. On this question Depew's conversations with Coutrakon, his deception of him in regard to the transmittal of the money, his letter to Carter, his relation to the American Specialty Company, the extent and character of the business and property of that company and its ability to carry out the contract, were all proper to be considered, and were considered, by the jury, and we cannot say upon the evidence that there is a reasonable doubt of the guilt of the plaintiff in error.

The witness William T. Fletcher was permitted to testify, over objection, that about five years before the trial the plaintiff in error was in the novelty business, under the name of the Elite Novelty Company, at Terre Haute, Indiana, and the witness twice investigated a complaint to the post-office department against that company. There was in the witness' testimony on this subject no evidence of anything illegal in connection with that business or defendant's acts. This evidence was incompetent and should not have been received; but its reception did not injure the plaintiff in error, for the verdict was amply justified by the other

undisputed evidence in the case. The same may be said of the evidence of the advertisement in the *Detroit News* and the contract with John T. Wineman, in Detroit.

Objection is made to the first instruction given for the People that it assumes the making of the contract was a swindling operation. It contains no such assumption, but requires the jury to find from the evidence, beyond a reasonable doubt, that it was a swindling operation before they can find the defendant guilty.

The second instruction assumes that plaintiff in error, after his arrest, caused an express package to be shipped to Coutrakon. This refers to a suit case which was received by the American Express Company on May 11 for Coutrakon and which was shipped to him May 9 from Indianapolis by the American Specialty Company. It contained some chewing gum, three fountain pens, stationery, advertising matter, report blanks and similar matter pertaining to the American Specialty Company. This suit case was shipped after the arrest of the plaintiff in error, and the circumstances show conclusively that it could only have been done by his direction given after his arrest. It is not error to assume in an instruction an admitted fact or one established by undisputed evidence.

The seventh instruction told the jury that if the defendant was proved guilty beyond a reasonable doubt they should not acquit him because it was possible that he was innocent; that the prosecution was not required to prove him guilty beyond the possibility of doubt. It was not error to give it.

The fifth, sixth and seventh instructions asked by the plaintiff in error were refused. The sixth was without basis in the evidence and the fifth and seventh were based upon the hypothesis that if a valid contract was entered into between the prosecuting witness and the American Specialty

Company the defendant must be found not guilty. This is an erroneous view of the law. These instructions omit the element of good faith. Even though a contract legally binding was executed, if it was entered into as a means of perpetrating a fraud and taking advantage of Coutrakon's confidence to obtain his money it was a swindling operation and the transaction was a confidence game. *Hughes* v. *People, supra; Chilson* v. *People, supra.*

The judgment is affirmed.
*Judgment affirmed.*