## STATE v. MAX BROOKS.[1]

April 7, 1922.

No. 22,730.

**False pretense—conviction for attempt to swindle sustained.**

1. The evidence sustains the verdict of the jury finding an attempt to commit the crime of swindling by inducing another by means of a trick and scheme to engage in betting on a fake horse-race, and thereby obtaining his money to be used in the payment of checks issued in the course of such betting.

**Indictment sufficient.**

2. The indictment alleged that the defendant attempted to commit the crime of swindling by means of a trick and scheme commonly called the "fake horse race scheme," a more particular description of such trick and scheme being to the grand jury unknown. *Held*, that the indictment stated a public offense.

Defendant was indicted by the grand jury of Hennepin county charged with the crime of attempting to swindle, tried in the district court for that county before Molyneaux, J., who denied defendant's motion to dismiss the proceeding and his motion for a directed verdict of not guilty, and a jury which found him guilty as charged in the indictment. Defendant's motion for judgment notwithstanding the verdict or for a new trial, was denied. From an order denying his motion for a new trial, defendant appealed. Affirmed.

[1]Reported in 187 N. W. 607.

*Donald G. Hughes* and *Neil Hughes*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Assistant Attorney General, *Floyd B. Olson,* County Attorney, and *Elmer W. Gray*, Assistant Attorney General, for respondent.

DIBELL, J.

The defendant was convicted of an attempt to commit the crime of swindling and appeals from the order denying his motion for a new trial.

The crime of swindling is defined by G. S. 1913, § 8737, so far as now material, as follows:

"Every person who, by means of three-card monte, so called, or of any other form or device, sleight of hand, or other means, by use of cards or instruments of like character, or by any other instrument, trick, or device, obtains from another person any money or other property of any description, shall be deemed guilty of the crime of swindling."

1. The jury could have found from the evidence facts about as follows:

One Henry C. Gibson was a farmer living in North Dakota. In October, 1919, he was at Minneapolis. He was interested in some grain trades on the Minneapolis Chamber. The defendant Brooks overheard a conversation between him and some of his neighbors at a hotel, and introducing himself as Basset or Dasset. He said that he was looking for a location and inquired about lands in the vicinity of Gibson's home and formed an acquaintanceship. He found that Gibson had some deals on the Chamber. He took him out to supper, and made an appointment to meet him at the Chamber of Commerce the next day. They met and later lunched together. After lunch they started for a walk. The defendant picked up a pocketbook from the sidewalk. He dropped it himself, but assumed that he found it. In it was a $20 bill, a bond for $50,000 and other papers. They walked on and soon met a man who inquired whether anybody had found a leather wallet containing paper and money. The defendant gave him the pocketbook. He introduced himself as Furen or Fruen. He was grateful, and wanted to reward them.

Besides the money and the bond there was in the pocketbook what Furen said was a "Greek code" which was a sure guide to successful horse-race betting, for by it he could tell which horse would win. He offered to give them the $20 or take it and bet it for them. Brooks gave him the $20 to be bet and he went away and came back with the $20 increased to $100. Furen said there was to be another bet .in a few minutes. Brooks went and made the bet this time. Furen told him where to go. Furen and Gibson waited for him at a club. Brooks soon returned with a pasteboard check which showed his bet. A few minutes later, at the suggestion of Furen, Brooks went to draw the money on the bet. He soon returned with quite a large sum, perhaps $1,000. Then another bet was coming off. It was arranged that they make two checks of $2,500 each, and put that amount along with their winnings. Gibson refused to sign. Furen signed a check in the name of John Gibson. Brooks took the money and the checks to make the bet. He was back in a few minutes saying that he had made the bets. A few minutes later he went to draw the money. He had made two bets, one with the cash and one with the checks. He soon returned considerably agitated. He had won something like $20,000 or $25,000. The cashier counted it out to him in cash. Brooks was going to redeem the checks. The cashier asked him if he was "a subscriber to the race horse betting club." Finding that he was not he refused to honor the checks and drew back all the money. He would do nothing with the checks. Furen said he would fix it up. All three started out together. When they had gone a block they met the cashier. Furen offered to vouch for the checks, but the cashier said they would have to make good in cash. Furen asked for a few days to get the money to redeem the checks. Furen asked Gibson and Brooks whether they could raise some money. Gibson was asked about the grain he had bought on the Chamber. It was suggested that he get rid of it so as to get the money to redeem the checks. Gibson and the defendant kept out of sight that night. The next morning they went to the Chamber of Commerce. Gibson had about $1,600 in grain deals. He caused the arrest of Brooks. Why he did

not continue with the transaction does not appear nor is it legally important.

The evidence narrated, if believed, discloses one of the many varieties of a species of fraud more or less successfully practiced the country over by and against one class and another of men eager for unearned money. There is no difficulty with a finding that it was swindling within the statute quoted. The assumed finding of the pocketbook with the money and the bond and the "Greek code," the timely appearance of the owner, the betting on the horse-race which was clearly enough a fake, the issuance of checks which it became necessary to redeem, and which it was feared might get them all into trouble, the plan of raising money to redeem them so as to reach the large winnings and avoid trouble—all were properly enough found by the jury to constitute a trick and scheme to get the money which was coming to Gibson from his trades on the Chamber. The case is well enough within State v. Wilson, 72 Minn. 522, 75 N. W. 715 (padlock game); State v. Smith, 82 Minn. 342, 85 N. W. 12 (short-change trick); and State v. Evans, 88 Minn. 262, 92 N. W. 976 (marked card trick).

The jury properly found an attempt to commit the crime of swindling. There were overt acts done with intent to commit the crime, and tending but failing to accomplish it. Such acts constitute an attempt. G. S. 1913, § 8490.

2. The indictment alleges that the defendant attempted to commit the crime of swindling and to that end "did wilfully, unlawfully, wrongfully, knowingly, feloniously, fraudulently and deceitfully, by use and means of a trick and scheme, commonly called the 'Fake Horse Race Scheme,' a more particular description of such trick and scheme being to the grand jury unknown, attempt to obtain from him, Henry C. Gibson, the sum of Five Thousand Dollars," etc., the "said acts so done by the said Max Brooks then and there tending to the commission of the crime of swindling, the said Max Brooks intending to commit the crime of swindling, and failing to effect the commission of the said crime, being then and there intercepted and prevented from the commission of the same."

It is objected that the indictment fails to state a cause of action.

It is not a model. No objection was taken by demurrer. The only question is whether it states a public offense. No bill of particulars was asked. See State v. Wassing, 141 Minn. 106, 169 N. W. 485. The indictment alleges that the offense of swindling was committed by a trick and scheme and to a limited extent particularizes. Within the decisions it states a public offense. State v. Gray, 29 Minn. 142, 12 N. W. 455; State v. Briggs, 84 Minn. 357, 87 N. W. 935; State v. Evans, 88 Minn. 262, 92 N. W. 976.

The case was presented to the jury fairly and we find nothing further calling for mention.

Order affirmed.