### STATE v. MAX YURKIEWICZ (ALSO KNOWN AS MAX YORK).[1]

June 21, 1940.

No. 32,343.

[1]Reported in 292 N. W. 782.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *William G. Compton,* First Assistant County Attorney, for the State.

*Samuel Saliterman* and *Max Rotenberg,* for defendant.

*Kingman, Cross, Morley, Cant & Taylor, amici curiae,* filed a brief in behalf of Better Business Bureau of Minneapolis, Inc.

PETERSON, JUSTICE.

This case is here on certification of the order overruling the demurrer to the indictment as amplified by a bill of particulars.

The indictment charges the defendant with the crime of swindling under 2 Mason Minn. St. 1927, § 10219, which so far as here material reads as follows:

"Every person who, by means of three-card monte, so called, or of any other form or device, sleight of hand, or other means, by use of cards or instruments of like character, or by any other

instrument, trick, or device, obtains from another person any money or other property of any description, shall be deemed guilty of the crime of swindling."

We summarize its allegations to keep the opinion within due bounds. There are general allegations in the language of the statute to the effect that defendant committed the crime of swindling on January 3, 1939, by willfully, unlawfully, wrongfully, falsely, fraudulently, and deceitfully, "by the use and means of a trick, scheme and device commonly called 'Fake Investment and Employment Contract' * * * obtain from one Don W. Beaudry $500." The bill of particulars specifically alleges that by certain false and fraudulent statements, representations, and promises defendant obtained the confidence of Beaudry and by means thereof induced him to turn over the money. There are representations of present and past facts to the effect that Beaudry was brought into contact with defendant by means of a blind ad inserted in a Minneapolis daily newspaper by one Shepard, who advertised for a lady or gentleman for general office work in a good business and to invest $500 to $2,000; that Beaudry answered the ad; that his answer was referred to defendant, who answered his letter signing it "The Merit Fur Company, By Max York, Secty-Treas.," requesting Beaudry, who lived at Lake City, to come to Minneapolis for an interview and at the same time advising him that he "should fit in very nicely with the work of our organization," that defendant was developing a fine and rapidly growing business and could utilize a man of Beaudry's experience as credit manager. Beaudry had a personal interview in which defendant stated that the Merit Fur Company had a fully equipped plant; that during busy seasons it employed as many as a dozen persons; that it had manufactured fur coats for which there was a tremendous demand; that it had four stores for the sale of the coats; that defendant had invested $10,000 in the business, which had grown to great proportions; that the company needed a matching department which entailed an investment of $500; that the company was in good financial condition, which he claimed was evidenced by a financial statement of its

business which defendant furnished to Beaudry; that if Beaudry would invest $500 his money would be safe by reason of the financial condition of the company; and that the company would pay him $300 per month salary as credit manager with certain increases. There were other representations relating to the future and promissory in character. Defendant stated that the company was going to open new stores at Fergus Falls and Fargo; that it was going to advertise on the radio; and that Beaudry could, as defendant had done, build up a profitable business for himself at Lake City, which defendant would start for him. There were other representations which it is not necessary to enumerate.

Defendant told Beaudry that in the fur as in the diamond business those engaged in it together must have confidence in each other; that the two of them should be like brothers and that he had built the business on merit just as the name indicated. Relying on the statements and his confidence in defendant obtained thereby, Beaudry turned over to him $500, for which he received stock in the Merit Fur Company.

All the representations are alleged to have been false and fraudulent. There are specific allegations that the representations relating to the future were made without any intention of keeping them. The conclusion is that by means thereof defendant cheated and defrauded Beaudry of his property and appropriated the same to his own use.

The court below certified the following questions to us with a request for our answer to them:

(1) May the crime of swindling, as defined in 2 Mason Minn. St. 1927, § 10219, be committed by other tricks, schemes, forms, or devices than the three-card monte, sleight of hand, cards, or instruments of like character?

(2) Does the indictment substantially conform to the requirements of 2 Mason Minn. St. 1927, §§ 10639, 10640, 10641, 10642, as qualified by § 10647?

(3) Could the facts stated in said indictment and bill of particulars, if proved, constitute the crime of swindling as defined by 2 Mason Minn. St. 1927, § 10219?

(4) May the crime of swindling, as defined by 2 Mason Minn. St. 1927, § 10219, be predicated on promises to be performed in the future provided the confidence of the victim is gained by said promises and proper proof is made that the defendant, with criminal intent, had no intention to and did not keep said promises?

(5) Would the fact that the transaction was made to assume the form of a legitimate contract and business deal be material if, in fact, it was a swindling operation?

■ Questions 1 and 3 will be considered together. The point raised is whether swindling may be accomplished by mere words and promises without some material or mechanical device. The statute enumerates several means by which the crime of swindling may be perpetrated. Included is the common-law offense of common cheat which was committed by the use of mechanical means such as false tokens, symbols, and devices. Words and conduct as other means are added. The object of our statute was to codify and expand the common law on the subject of cheats so as to reach cheats and swindlers of all kinds. State v. Wilson, 72 Minn. 522, 525, 75 N. W. 715. The offense may be committed by means of a trick or scheme consisting of mere words and actions without the use of a mechanical device. State v. Brooks, 151 Minn. 502, 187 N. W. 607 (fake horse-race scheme); State v. Smith, 82 Minn. 342, 85 N. W. 12 (short-change trick). The gist of the offense is cheating and defrauding another of his property by deliberate artifice. Generally the commission of the offense is accomplished by the practice of imposition upon the victim. The allegations are that defendant obtained Beaudry's confidence and then by fraudulent representations and stratagem induced him to part with his money. That Beaudry was victimized and defendant obtained his money by cheating and defrauding him by deliberate trick and artifice is alleged. Those facts constitute the crime of

swindling. In State v. Smith, 82 Minn. 342, 345, 85 N. W. 12, we held that the facts may constitute swindling although they would also justify a conviction for larceny.

■ Question 4 will be answered with the qualifications made necessary by the facts alleged. The indictment alleges both past and present facts as well as facts relating to the future. It is not a case of mere promise to be performed in the future made without intention of fulfillment. We must limit our decision to the actual question presented. Decision on points not actually involved in the litigation is beyond our power. See Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 290 N. W. 802. An indictment for swindling may contain allegations that the crime was committed by fraudulent representation of facts relating both to the present or past and to the future. State v. Hacker, 153 Minn. 538, 191 N. W. 37; 22 Am. Jur., False Pretenses, § 14.

■ Question 5. The fact that the transaction took the form of a legitimate contract and business deal does not prevent the acts from constituting a swindle. The law looks to the substance and not to the form of a transaction. If it is a swindle in substance its form makes no difference. State v. Hacker, 153 Minn. 538, 541, 191 N. W. 37; Elliott v. People, 56 Colo. 236, 138 P. 39; People v. Emmel, 292 Ill. 477, 127 N. E. 53; People v. Depew, 237 Ill. 574, 86 N. E. 1090. The decided cases show that many swindling transactions, as here, were initiated by an ad in a paper and ended as did the instant one.

■ Question 2 is answered in the affirmative. The questions which are requested to be answered raise many questions under 2 Mason Minn. St. 1927, §§ 10639, 10640, 10641, 10642, and 10647. The only point urged here is whether or not the indictment charges the crime of swindling as defined by the statute. Since that is the only point raised, it is the only one which we shall decide. The answer to the question certified will be limited accordingly. The indictment sets forth with precision and certainty all the elements of the offense. These are alleged generally in the language of the statute and particularized as to fact and circumstance. The indictment is direct and certain as to the

party, the offense, and the particular circumstances of the offense charged. The indictment is sufficient under the rule of cases like State v. Brooks, 151 Minn. 502, 187 N. W. 607; State v. Evans, 88 Minn. 262, 92 N. W. 976; State v. Smith, 82 Minn. 342, 85 N. W. 12.

Our conclusions are:

Questions 1, 2, and 3 are answered in the affirmative.

Question 4 with qualifications added in the opinion is answered in the affirmative.

Question 5 is answered in the negative.

Affirmed.

