STATE v. C. N. CUNNINGHAM.

99 N. W. (2d) 908.

December 11, 1959—No. 37,524.

*Thomas W. Newcome,* for appellant.

*Miles Lord,* Attorney General, *Charles E. Houston,* Solicitor Gen-

eral, *William B. Randall*, County Attorney, and *John P. Frank*, Assistant County Attorney, for respondent.

DELL, CHIEF JUSTICE.

This is an appeal from a judgment convicting the defendant of the crime of swindling in violation of M. S. A. 614.11.

There is no dispute as to the facts involved. On May 21, 1957, the defendant purchased paint costing $8.50 at a paint store in St. Paul, owned in part by one Vincent Koenke. The sale was made by a clerk, Miss Tirzah Koenke, who had never seen nor heard of the defendant previously. The defendant paid for the purchase with a blank counter check which he had with him. He made the check payable to the order of "Cash" in the amount of $15, drew it on the "First National Bank, St. Paul, Minn.," and signed it "C. N. Cunningham, 624 E. Central Pk. Place, St. Paul, Minn." In the lower left-hand corner the defendant wrote the words "(Painting Contractor)." While the record is not entirely clear, it appears that before writing out the check the defendant introduced himself to Vincent Koenke (hereinafter referred to as Koenke), who was also present in the store. Although Koenke did not recognize the defendant when he first came into the store, upon the defendant's identifying himself, Koenke remembered that he worked with the defendant on a previous painting job.

The two men talked about a new type of paint that had come out, and the defendant ordered some to be delivered to him at a specified construction site the following day. This order was in addition to the paint purchased by the defendant in the store. Koenke testified that he did not pay too much attention to the check or the manner in which it was written out because he was busy writing up the defendant's order for the following day "which kind of confused me." Koenke "O. K.'d" the check without looking at it and handed it to the clerk telling her that it was all right to cash it. She put the check in the cash register and gave the defendant his change and merchandise. There was no conversation between the defendant and Koenke regarding the validity of the check.

The next day Koenke, in attempting delivery, discovered that the

defendant had never been heard of at the place where he had ordered the paint delivered and the defendant's check was subsequently returned to Koenke by his bank with a "no account" notice.

After his arrest defendant admitted passing a total of 73 "no account" checks between July 1956 and October 1957. The court received evidence of these other transactions, all of which involved checks of $20 or less, each check being passed at a different location and signed by the defendant as Clarence N. or C. N. Cunningham.

■ The sole question presented for review is whether the drawing and passing of a check upon a bank where a defendant has no account constitutes swindling as defined in § 614.11. This issue is one of first impression and, as is subsequently discussed, its determination is of paramount importance to both the state and the accused.

Section 614.11, which has remained essentially the same since its enactment in 1877,[1] provides as follows:

"Every person who, by means of three-card monte, so-called, or of any other form or device, sleight of hand, or other means, by use of cards or instruments of like character, or by any other instrument, trick, or device, obtains from another person any money or other property of any description, shall be guilty of the crime of swindling, and be punished by imprisonment in the state prison for not less than two, nor more than five, years, or by a fine of not less than $200, nor more than $2,000; and every person aiding, encouraging, advising, or confederating with, or knowingly harboring or concealing, any such person, or in any manner being accessory to the commission of the above described offense, and all persons who shall confederate together for the purpose of playing such games, shall be deemed principals therein and punished as such."

The state argues that the passing of a "no account" check is the obtaining of money by trick or device within the meaning of this section and consequently constitutes a felony. The defendant, on the other hand, contends that the existence of other statutes governing the pass-

---

[1] L. 1877, c. 130, § 1. The original language is quoted in part in State v. Gray, 29 Minn. 142, 12 N. W. 455.

ing of bad checks is indicative of the legislative intent to exclude this crime from the swindling statute. Under M. S. A. 622.03,[2] the passing of a "no account" or "insufficient fund" check is stealing, the degree of which depends upon the amount involved. In the instant case, for example, the crime would have been petit larceny, a misdemeanor.[3] Section 622.04,[4] which was enacted in 1911, makes fraudulent check

---

[2]M. S. A. 622.03 provides: "Every person who shall wilfully, with intent to defraud by color or aid of a check, draft, or order for the payment of money or the delivery of property, when such person knows that the drawer or maker thereof is not entitled to draw on the drawee for the sum specified therein, or to order the payment of the amount or delivery of the property, although no express representation is made in reference thereto, shall obtain from another any money or property, shall be guilty of stealing the same, and punished accordingly."

[3]Under § 622.07 petit larceny is punishable by imprisonment in the county jail for not more than three months or by a fine of not more than $100. Such punishment makes the crime a misdemeanor under § 610.01.

[4]Section 622.04 provides: "Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering, or delivery that the maker or drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a gross misdemeanor; and, upon conviction thereof, shall be fined not more than $1,000 or imprisoned for not more than one year or both.

"The making, drawing, uttering, or delivering of such check, draft, or order shall be prima facie evidence of intent to defraud and as against the maker or drawer of knowledge of insufficient funds in or credit with such bank or other depository; where such check, draft, or order has been protested for insufficient funds or *no account*, the notice of a protest thereof shall be admissible as proof against the maker or drawer of such presentation, non-payment, and protest, and shall be prima facie evidence that there was a lack of funds in or credit with such bank or other depository.

"The word 'credit,' as used herein, shall be construed to mean an arrangement or understanding with the bank or depository for the payment of such check, draft, or order." (Italics supplied.)

passing a gross misdemeanor.[5] The two statutes are distinctive in several respects. First, § 622.03 is analogous to the crime of obtaining money by false pretenses[6] in that it is necessary that some person be actually defrauded, whereas under § 622.04 the crime is completed upon the passing of the check even though no one is actually injured thereby. Secondly, the check, draft, or order referred to in § 622.03 may be for the payment of money or the delivery of property drawn on any person, while under § 622.04 the check, draft, or order is limited to the payment of money and must be drawn on a bank or depository. While the state asserts that § 622.03 is limited to "no account" checks and § 622.04 to "insufficient fund" checks, we can find no language in either statute indicating any such limitation. It seems obvious that if a person has no account with the drawee bank, it necessarily follows that he lacks "sufficient funds in or credit with such bank" as provided for in § 622.04.

In any event, the state, for the admitted purpose of deterring the growing practice of writing false checks, seeks to impose the more stringent penalties of § 614.11. A similar motivation for more severe penalties,[7] as well as certain evidentiary advantages sometimes available to the prosecution under swindling or confidence game statutes,[8] have occasioned the consideration of the issue before us in the appellate courts of several other jurisdictions. For example, in People v. Lindsay, 119 Colo. 248, 202 P. (2d) 951, the defendant was prosecuted under Colorado's confidence game statute which, unlike the Minnesota statute, specifies "false or bogus checks" as one of the prohibited confidence games. Colorado also has another statute (referred to as the 1885 act), which, in substantially the same language as § 622.04,

---

[5]As to the nature of permissible punishment under § 622.04, see State v. Masteller, 232 Minn. 196, 45 N. W. (2d) 109.

[6]The crime of false pretenses is covered by § 622.01, the general larceny statute.

[7]See, People ex rel. Metzger v. District Court, 119 Colo. 451, 457, 208 P. (2d) 79, 81; People v. Singer, 288 Ill. 113, 122, 123 N. E. 327, 331.

[8]In some jurisdictions corroborative evidence is necessary to sustain a conviction for false pretenses while it is not necessary for swindling. For example, compare California Penal Code, §§ 332 and 1110.

prohibits the fraudulent passing of checks drawn on banking institutions without sufficient funds or credit. Despite the specific reference to "false or bogus checks" in the confidence game statute, the court said (119 Colo. 251, 202 P. [2d] 952):

"* * * Had the Legislature considered that the offense as outlined in the 1885 act was covered by the 'confidence game' statute of 1861, then it must be said that the Legislature was engaging in idle pastime. Such cannot be the finding of this court. Ordinary reason compels us to say that the Legislature did not consider that the offense outlined in the 1885 act was covered by the 'confidence game' statute, * * *."

The court went on to hold that as used in the confidence game statute "false or bogus" check means something more than the mere making and passing of a bad check.[9]

Similarly, in People v. Peers, 307 Ill. 539, 543, 139 N. E. 13, 15, the court said:

"* * * It will not be presumed that the legislature intended to make one and the same transaction a misdemeanor under one section of the Criminal Code and a felony under another section."

This rationale is persuasive in the instant case. If our swindling statute was intended to cover the precise situation prohibited under §§ 622.03 or 622.04, the enactment of these latter statutes would have been superfluous. Even in the early case of State v. Wilson, 72 Minn. 522, 525, 75 N. W. 715, 716, the court noted that since the act of obtaining goods by false pretenses was made indictable in another section, the crime of swindling must include some additional or different element.

It is of course true, as contended by the state, that the fact that the evidence would justify a conviction for larceny (or for a violation of §§ 622.03 or 622.04) does not make the offense any the less swindling if there are additional circumstances sufficient to bring the case within the swindling statute. It is quite another thing to say that the passing of a check in violation of some other statute automatically constitutes swindling under § 614.11. Such a holding would be nothing more than

---

[9]But see Chasse v. People, 119 Colo. 160, 201 P. (2d) 378, which was summarily distinguished in the Lindsay case.

judicially raising the classification of the crime to a felony when the legislature has seen fit to otherwise designate it.

■ Furthermore, in none of the decisions construing § 614.11 have we given the statute the broad coverage urged by the state. The language of the statute was first interpreted in State v. Wilson, *supra,* where Mr. Justice Mitchell noted (72 Minn. 525, 75 N. W. 716) that the "object of the statute was, doubtless, to codify, and at the same time to expand, the common law on the subject of 'cheats.' " It should be noted that if § 614.11 were taken literally, the defendant, even if he passed a valid check, would be guilty of swindling since "Every person who * * * by any other instrument * * * obtains from another person any money * * * shall be guilty of the crime of swindling." In order to avoid absurd consequences, injustice, and possible constitutional prohibitions, the general words of the statute must be modified and limited by the words "trick, or device"[10] and the statute construed with reference to its common-law background.[11]

At common law cheating consisted of (1) the fraudulent taking of another's property, (2) by means of a false token, symbol, or device, (3) of such a nature that common prudence could not guard against it.[12] The primary concern of the decisions interpreting § 614.11 has been the effect of the statute in modifying the second element of the common-law offense. For example, in State v. Wilson, *supra,* the court, holding that the use of a trick lock to deceive an innocent victim constituted swindling, held that the property must have been obtained (72 Minn. 525, 75 N. W. 716) "by some false token or device other than mere words." This language was elaborated on in State v. Smith, 82 Minn. 342, 345, 85 N. W. 12, 13, where the court, finding that the "short change" trick came within the statute, said:

---

[10]See, State v. Suess, 236 Minn. 174, 52 N. W. (2d) 409.

[11]Although common-law offenses have been abolished in this state, common-law concepts may be used as an aid in construction. See, e. g., State v. Hayes, 244 Minn. 296, 70 N. W. (2d) 110; State v. Arnold, 182 Minn. 313, 235 N. W. 373; State v. Rollins, 80 Minn. 216, 218, 83 N. W. 141, 142.

[12]State v. Wilson, 72 Minn. 522, 75 N. W. 715; State v. Renick, 33 Ore. 584, 585, 56 P. 275, 276, 44 L. R. A. 266; Miller, Criminal Law, § 117; 2 Wharton, Criminal Law and Procedure, § 580.

"This court did not, in the case of State v. Wilson, 72 Minn. 522, 75 N. W. 715, by the statement therein that, to constitute the crime of swindling under this statute, the property must have been obtained by some false token or device other than mere words, intend to hold, or be understood as holding, that a mechanical contrivance was necessary to be employed to constitute a device, within the meaning of the law, or to eliminate from the statute that provision relating to tricks and sleight of hand. Property may be taken or obtained from another by means of a trick or sleight of hand, coupled with the use of words and actions, and the person so obtaining it be guilty of swindling, under the statute, even though no device, in the sense of a mechanical contrivance, be used at all."

Finally, in State v. Yurkiewicz, 208 Minn. 71, 292 N. W. 782, involving swindling by means of a combination investment and employment contract, the court held that words and *conduct* in themselves are sufficient if they constitute a deliberate trick or artifice whereby the victim is cheated and defrauded of his property. Thus while eliminating the common-law requirement of a false token or symbol, this court has never indicated that § 614.11 was intended to do anything other than codify the third element of the common-law offense; namely, that the trick must be of such a nature that ordinary prudence cannot guard against it. Certainly the exercise of ordinary care would frequently require that the intended victim question the validity of the check. One cannot ignore the fact that merchants, banking institutions, and the like are well aware of the danger of illicit checkpassers. Where the person offering the check is unknown, it is customary and prudent, in our modern commercial practice, to require identification or take other steps to protect against this common type of crime. To hold that the drawing and passing of a check on a bank where a defendant has no account or insufficient credit is a violation of § 614.11, without any additional circumstances being present, would be an unwarranted "whittling down" of the requirements of the swindling statute.[13]

---

[13]See, State v. Allen, 128 Mont. 306, 316, 275 P. (2d) 200, 205.

■ The question remains whether, under the particular circumstances of this case, the passing of the check was within the swindling statute. From what we have said it can be concluded that if the passing of a false check is part of a trick, in the sense of a fraudulent device or scheme that cannot be guarded against by ordinary prudence, it constitutes the crime of swindling.[14] The state argues that the large number of checks passed by the defendant shows such a fraudulent scheme. While the evidence of similar, related crimes is admissible as showing criminal intent,[15] this is not the type of scheme contemplated by the statute. Repeated passing of false checks does not ordinarily make a particular victim any the less wary or cautious.[16] The scheme or device referred to is the one which causes the victim to part with his money or property when he would not otherwise do so.

We cannot entirely agree with those courts which hold that the gravamen of the offense is the *intent* of the perpetrator rather than the *means* used.[17] The intent to obtain the property of another by fraud remains basically the same whether the crime be false pretenses under § 622.01, passing false checks under §§ 622.03 or 622.04, or swindling under § 614.11. Consequently, while the perpetrator's intent is an important element of the offense, it is the means used to effectuate this intent which differentiates the swindling statute from the others.[18]

---

[14]The information in the instant case charges, among other things, that the defendant did "cheat and swindle" by means of a "fraudulent instrument" in violation of § 614.11. While it would have been preferable to add, in the language of the statute, that the money was also obtained by means of a "trick or device," the defendant was, nevertheless, directly charged with a violation of the statute. The failure to set forth the statutory words "trick or device" did not in any way prejudice defendant's substantial rights upon the merits nor is it so contended upon this appeal. See, § 628.19; State v. Suess, 236 Minn. 174, 52 N. W. (2d) 409.

[15]State v. Yurkiewicz, 212 Minn. 208, 3 N. W. (2d) 775; State v. Sweeney, 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380.

[16]Cf. People v. Lindsay, 119 Colo. 248, 202 P. (2d) 951.

[17]McBride v. People, 126 Colo. 277, 248 P. (2d) 725.

[18]See Clark v. State, 53 Ariz. 416, 89 P. (2d) 1077, where the court distinguishes false pretenses and confidence game statutes by the manner in which the defrauding is accomplished. See, also, State v. Griggs, 361 Mo. 758, 764, 236 S. W. (2d) 588, 591.

Some courts have also emphasized the necessity of confidence being reposed by the victim in the perpetrator, although this is ordinarily done in connection with statutes specifically referring to "confidence games."[19] While these statutes are in many respects similar to our swindling statute,[20] it is not essential under our statute that any special confidence be reposed in the accused. It is sufficient, for example, if the victim's money is procured by "sleight of hand," which could well occur without any special confidence being obtained.[21] On the other hand, if the fraudulent procuring of a victim's confidence, as distinguished from confidence honestly acquired in the course of regular business dealings,[22] is the method used to dispel the victim's normal suspicion or caution, it constitutes a scheme within the purview of the statute.[23]

Viewing the facts of the instant case in the light of what has been said, we conclude that the evidence is sufficient to sustain a conviction under § 614.11. The advantage taken by the defendant of his previous acquaintance with Koenke would not, in itself, have justified Koenke's failure to question the validity of the check. However, the additional device of placing an order for paint to be delivered the following day at

---

[19]See, e. g., State v. Allen, 128 Mont. 306, 275 P. (2d) 200; State v. Wilson, 223 Mo. 156, 122 S. W. 701. But cf. McBride v. People, 126 Colo. 277, 248 P. (2d) 725.

[20]In McBride v. People, 126 Colo. 277, 284, 248 P. (2d) 725, 729, the court noted that a violation of the "confidence game" statute was not an offense at common law, suggesting a difference between the "confidence game" and "swindling" statutes. See, also, 2 Wharton, Criminal Law and Procedure, § 619.

[21]See, e. g., State v. Smith, 82 Minn. 342, 85 N. W. 12. In State v. Hale, 134 Mont. 131, 138, 328 P. (2d) 930, 934, the court, discussing various types of confidence game statutes, noted: "In the sleight of hand, fast count, fast buncombe talk or mechanically contrived swindle, confidence and the integrity of the operator or swindler is not the reason that the money is taken from the victim."

[22]See, Bomareto v. People, 111 Colo. 99, 102, 137 P. (2d) 402, 404; People v. Snyder, 327 Ill. 402, 404, 158 N. E. 677, 678, 56 A. L. R. 722.

[23]See, e. g., State v. Yurkiewicz, 208 Minn. 71, 292 N. W. 782; State v. Brooks, 151 Minn. 502, 187 N. W. 607 (horse-racing scheme).

a construction site could well have made any ordinarily prudent person unwary. The fictitious nature of the order clearly shows the defendant's intent to swindle by means of this subtle and crafty device, which, according to Koenke, caused sufficient confusion so that he did not even pay much attention to the defendant's check.

Each case must rest on its own particular facts and circumstances, and our decision here is necessarily limited to the facts before us. The conduct of the defendant here constituted a "trick or device" within the purview of § 614.11 and accordingly the conviction must be sustained.

Pursuant to § 611.07, subd. 2, $75.70 is awarded to counsel for the defendant to reimburse him for expenses paid in connection with this appeal together with attorney's fees of $200.

Affirmed.