## STATE v. VELDEE HODGE.

123 N. W. (2d) 323.

August 2, 1963—No. 38,627.

*Veldee Hodge,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Thomas M. Bambery,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

This appeal is the result of a conviction for swindling.

The state claims that defendant, with knowledge he was overdrawn, cashed a series of checks by displaying a false driver's license and by wearing a postal employee's shirt and insignia. Defendant does not seriously dispute the facts but challenges the sufficiency of the evidence to support a charge of swindling. By his own testimony it appears defendant was guilty of previous checkwriting offenses whereby he realized approximately $2,000, using his own name on the checks and displaying a valid driver's license as identification. For these offenses defendant in the fall of 1958 was convicted and subsequently committed to the workhouse, from which he shortly escaped. In the year 1959 he claims

he used the name "James Olson." Thereafter he was apprehended, convicted of escaping, recommitted, and escaped again on June 27, 1960. Defendant testified that on June 29, 1960, he opened a checking account at the Fourth Northwestern Bank using the name James R. Olson, the surname being his wife's maiden name. He made a deposit of $200 and received a book of checks. Although by July 15 his account was exhausted, on July 15 and 16 he cashed 18 checks for $50 each in a number of Red Owl stores located in Hennepin County.

For some time prior to his termination on September 24, 1957, defendant carried mail for the U. S. Post Office Department. In performing his duties he wore a uniform which included, among other things, a blue shirt with a shoulder patch containing a post-office insignia.

Because of a number of driving offenses, defendant's license was revoked on March 26, 1958. To rectify this situation defendant applied for another license in the name of James Clifford Olson. Having passed the test, he received in July 1959 a new license under the name of Olson, showing an address at which he did not live.

The charge against defendant, as contained in the information, asserts that on July 15 and 16, 1960, in Hennepin County, by means of a trick, scheme, and device, commonly called a check racket, and by the use of checks, defendant obtained from Red Owl stores $900 which he wrongfully appropriated to his own use in violation of Minn. St. 614.11 defining swindling.[1]

Without denying the facts recited, defendant contends that this of-

---

[1] The full text of the swindling statute is as follows: "Every person who, by means of three-card monte, so-called, or of any other form or device, sleight of hand, or other means, by use of cards or instruments of like character, or by any other instrument, trick, or device, obtains from another person any money or other property of any description, shall be guilty of the crime of swindling, and be punished by imprisonment in the state prison for not less than two, nor more than five, years, or by a fine of not less than $200. nor more than $2,000; and every person aiding, encouraging, advising, or confederating with, or knowingly harboring or concealing, any such person, or in any manner being accessory to the commission of the above described offense, and all persons who shall confederate together for the purpose of playing such games, shall be deemed principals therein and punished as such."

fense does not constitute swindling, which is a felony, but consists of a series of misdemeanors improperly combined in one information. Defendant asserts that at most he is guilty only of issuing checks with knowledge he had insufficient funds for their payment, a gross misdemeanor under § 622.04.

1. There is testimony from which the jury could find that as early as 1957 Red Owl stores were warned against cashing checks bearing defendant's signature. The jury could infer that with knowledge of this fact defendant opened an account in a different name and secured the issuance of a driver's license in the name of James Clifford Olson as a part of a deliberate plan to swindle the Red Owl stores. Defendant concedes that in all but one instance when he cashed checks for $50 on July 15 and 16, he presented his fraudulently obtained driver's license as identification, showing an address at which he did not live and a name which he had assumed. In photographs of defendant, taken by Red Owl when he cashed some of the checks, he was wearing a shirt to which the post-office emblem was attached. There was testimony that many of the checks were cashed in reliance on the fictitious driver's license and at least one on the assumption that defendant was a post-office employee in good standing.

The law on swindling has been so thoroughly discussed in State v. Cunningham, 257 Minn. 31, 99 N. W. (2d) 908, that it does not bear extended repetition. In Cunningham we pointed out that something more than issuing a check without sufficient funds is required to elevate an offense of this kind from a gross misdemeanor to a felony. However, we stated that under our prior decisions it is not necessary to employ a mechanical contrivance to constitute swindling.[2] Nevertheless, the cashing of a check without sufficient funds is not, standing alone, enough to constitute a "trick" within the meaning of the statute. There must be an additional element of cheating against which common prudence does not ordinarily protect. Thus, where a victim's confidence is fraudulently procured by a method which normally dispels suspicion or caution, the requirements of the statute have been satisfied.

---

[2]State v. Wilson, 72 Minn. 522, 75 N. W. 715; State v. Yurkiewicz, 208 Minn. 71, 292 N. W. 782.

We have said that wearing and exhibiting a police badge in impersonating an officer is a false token or device within the meaning of the statute. State v. Wilson, 72 Minn. 522, 75 N. W. 715. Recently, in State v. Wells, 265 Minn. 212, 121 N. W. (2d) 68, we stated that the gist of the offense is the cheating and defrauding of another by deliberate artifice. With these rules in mind we are of the opinion that the techniques used by defendant constitute the crime of swindling and affirm his conviction.

2. With respect to defendant's claim that the information is defective in purporting to combine a series of isolated offenses into one crime, we hold that swindling may be properly charged by allegations which set forth a number of incidents evidencing a single scheme or plan to defraud. The California court has disposed of a similar question in People v. Bailey, 55 Cal. (2d) 514, 519, 11 Cal. Rptr. 543, 546, 360 P. (2d) 39, 42, stating:

"* * * The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. The same rule has been followed in larceny and embezzlement cases, and it has been held that where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft."

In any case, no monetary minimum is specified in our swindling statute.

We have considered defendant's other assignments of error and find them to be without merit.

Affirmed.