## STATE v. JEROME RUFFIN.

158 N. W. (2d) 202.

April 11, 1968—No. 40,977.

C. *Paul Jones,* State Public Defender, and *Ronald C. Elmquist,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction. Defendant asks for a reversal or new trial on the grounds that Minn. St. 609.52, subd. 2(4), which proscribes theft by swindling, is unconstitutionally vague and uncertain; that the verdict is not supported by the evidence; and that the court erred in failing to give adequate instructions to the jury concerning the elements of the offense charged.

The facts out of which the prosecution arose are not in dispute. On the morning of September 23, 1966, Robert Spandel, 17 years of age, left the West Broadway Branch of the First National Bank in Minneapolis, after having deposited $50 to his account. Upon crossing the street, he was approached by defendant, Jerome Ruffin, who engaged him in conversation. Ruffin, speaking with a heavy Spanish accent, asked Spandel to help him find his brother who lived somewhere in the city. Spandel took Ruffin to a nearby drugstore to look through the Minneapolis telephone directory. There Spandel and Ruffin met a third man, an apparent stranger, who also became involved in helping Ruffin to locate the "brother." When the telephone directory proved a fruitless source, the third man, later identified as Hubert Wilson, suggested that all three go in his car to a place known to Wilson where Ruffin might get a room.

Wilson parked at an address in south Minneapolis and went into a home, allegedly to inquire about a room for Ruffin. In the meantime Spandel and Ruffin remained in the automobile and Ruffin directed their conversation to the subject of the safety of keeping money in banks. After what he reported to be a fruitless visit at the address where they stopped, Wilson returned to the car and the discussion continued. Banks, suggested Ruffin, were not safe places for money because, being basically dishonest institutions, they could not be depended upon to return your money once you let them have it. Spandel disagreed, admonishing Ruffin to deposit in a bank a large amount of cash he was purportedly carrying with him. Ruffin scoffed at this idea and suggested that he could prove he was correct. He challenged Spandel to withdraw money from his account at the bank. Spandel accepted the challenge to demonstrate that Ruffin was mistaken in his beliefs. He returned to the bank and withdrew $132 from his account. With proof of his bank's integrity in his hands, Spandel accompanied Ruffin and Wilson back to the address where they had stopped, and the three became engaged in a card game called "Chinese black jack poker." The game took place in Wilson's car and with Ruffin's cards. After a few hands, Ruffin won the $132 from Spandel. Ruffin quit while he was ahead. He consented, however, to go with Wilson and Spandel to where a "girl" lived. Fearing that he might lose his winnings at the "girl's" house, and apparently still unconvinced by Spandel's demonstration that banks could be relied upon, Ruffin appeared to wrap the money in an old newspaper, which he deposited in a garbage can in an alley. All three then started off to the "girl's" house.

Two and one-half blocks later, following a previous suggestion by Wilson, Spandel suddenly remembered that he must call his "sick sister." After agreeing to meet Wilson later, he left the car and returned immediately to the garbage can. There was no money in the newspaper nor had neighbors found any money in the area. Spandel then told his story to the police.

Three days later, on September 26, 1966, Seppo Valppu, a 17- or 18-year-old youth, 2 years removed from his native Finland, left a branch of the Northwestern National Bank in Minneapolis. He had on his person $205 in cash which he had withdrawn from his savings account. He

intended to use the funds for his mother's hospital bill and for his car payment. He, too, was approached by defendant Ruffin who, speaking in a Spanish accent, asked his help in finding a room. Wilson happened along and offered to help. He knew of a rooming house and would direct them there. The same elaborate ruse was reenacted. After a discussion, a card game followed, this time "Japanese black jack poker," and Valppu ended up losing the $205 which he had withdrawn from the bank. There followed the interrupted journey to the "girl's" house and the money-hiding routine. After searching the area where he thought the money had been left, Valppu called the police. There came a time shortly thereafter when all four met at a Minneapolis police station where the victims, Spandel and Valppu, identified Ruffin and Wilson in a police lineup.

Defendant and Wilson were charged by an information in two counts with having violated Minn. St. 609.52, subd. 2(4), which, so far as applicable here, provides:

"Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

\* \* \* \* \*

"(4)  By swindling, whether by artifice, trick, device, or any other means, obtains property from another person."

In considering defendant's claim that this statute is unconstitutional as being vague and uncertain, it should be noted that by the Criminal Code adopted in 1963 the legislature effected a unification of various prior statutes pertaining to such crimes as larceny, embezzlement, obtaining property by false pretenses, and, as applicable here, swindling. The various acts defined as criminal by § 609.52 were all designated as crimes of "theft." In several cases this court has had occasion to interpret the swindling provision of the prior law, Minn. St. 1961, § 614.11,[1] which is superseded by § 609.52, subd. 2(4). We observed that

---

[1] Minn. St. 1961, § 614.11, read as follows: "Every person who, by means of three-card monte, so-called, or of any other form or device, sleight of hand, or other means, by use of cards or instruments of like character, or by any other instrument, trick, or device, obtains from another person any money or other property of any description, shall be guilty of the crime of swindling \* \* \*."

the gist of the offense is the cheating and defrauding of another by deliberate artifice. State v. Hodge, 266 Minn. 193, 123 N. W. (2d) 323; State v. Wells, 265 Minn. 212, 121 N. W. (2d) 68; State v. Yurkiewicz, 208 Minn. 71, 292 N. W. 782. In the latter case we observed (208 Minn. 75, 292 N. W. 784):

"* * * Generally the commission of the offense is accomplished by the practice of imposition upon the victim."

We observed in the Wells case (265 Minn. 214, 121 N. W. [2d] 69):

"The statute was intended to reach cheats and swindlers of all kinds and descriptions. * * * Although varying techniques may be employed, the gist of the offense is the cheating and defrauding of another * * *."

No single definition can cover the range of possibilities for the offense. McBride v. People, 126 Colo. 277, 248 P. (2d) 725. As suggested in People v. Gipson, 29 Ill. (2d) 336, 340, 194 N. E. (2d) 318, 321, and People v. Jackson, 4 Ill. (2d) 296, 300, 122 N. E. (2d) 813, 815, statutes dealing with the offense are designed to reach the class of offenders who perpetrate swindling schemes, "as various as the mind of man is suggestive," upon unwary victims. It seems to us that it may be fairly said that the statute punishes any fraudulent scheme, trick, or device whereby the wrongdoer deprives the victim of his money or property by deceit or betrayal of confidence.

We think the statute meets the test of being sufficiently clear and definite to inform a person of ordinary intelligence what the statute is aimed at. State v. Kuluvar, 266 Minn. 408, 123 N. W. (2d) 699; Anderson v. Burnquist, 216 Minn. 49, 11 N. W. (2d) 776; State v. Bell, 280 Minn. 55, 157 N. W. (2d) 760. The act has for its purpose the prohibition of an undesirable form of conduct rather than a specific act. It may be determined with reasonable certainty that, as applied here, it includes conduct by which artifice and trickery are used to prey upon the inexperience and credulity of youth. It was intended to protect "[g]ullible people [who] need as much, if not more, protection against swindlers than do others endowed with greator caution." Pirsig, *Proposed Revision of the Minnesota Criminal Code,* 47 Minn. L. Rev. 417, 437.

■ It is next contended that the trial court erred in failing to clearly instruct the jury on the essential elements of the offense charged. From the record it appears that in a conference with counsel preliminary to the instructions, the court said:

"So it is true that neither of you wants any instruction given on the definition of swindling and I will simply read the statutes and give the essential elements of the crime plus the other usual instructions that are standard to an ordinary charge?"

In response to this statement, counsel for defendant stated:

"The only other exception, as I recall, is do I gather that you will give an instruction on circumstantial evidence?"

It is not contended by defendant that the information did not fully inform him of the nature and elements of the offense with which he was charged. Under circumstances where the meaning of the statute is sufficiently clear and the nature of the offense is plainly stated in the information, further definitions or explanations by the court were not required where defendant took no exception to the charge and made no request for a further charge. Accordingly, defendant's own affirmative request precludes our consideration of his present criticism of the court's charge. State v. Graham, 176 Minn. 164, 222 N. W. 909. It seems that this point is controlled by State v. Jones, 277 Minn. 174, 152 N. W. (2d) 67, where we held that, in the absence of a request, failure of the court to instruct the jury that a codefendant who had entered a plea of guilty was an accomplice as a matter of law, and that his testimony required corroboration, was not reversible error. The same rule applies here.

■ The contention of defendant that the evidence does not sustain the jury's verdict is apparently based on the claim that the victims were not swindled out of their money by a device or trick or scheme but that they gambled and fairly lost in a game of chance. We do not consider this claim of error to be of sufficient substance to warrant discussion.

Affirmed.