**STATE of Minnesota, Appellant,**

v.

**Mary E. FLICEK, Respondent,**

**Linda J. Borgen, Respondent.**

**Nos. C2–02–1269, C9–02–1270.**

Court of Appeals of Minnesota.

March 4, 2003.

Scott County District Court, File No.2001–22650.

Thomas J. Harbinson, Scott County Attorney, Neil Nelson, Chief Deputy Attorney, Shakopee, MN, for appellant.

Kai Lahti, Apple Valley, MN, for respondent, Flicek.

Christopher A. Grove, Apple Valley, MN, for respondent, Borgen.

Considered and decided by WRIGHT, Presiding Judge, ANDERSON, Judge, and STONEBURNER, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant State of Minnesota challenges the district court's dismissal of two grand-jury indictments against respondents. Appellant argues the district court applied the wrong rule of law in dismissing the indictments, that respondents improperly challenged probable cause, and that the district court erred by concluding that the evidence submitted to the grand jury was insufficient to establish probable cause for the offenses. Because we conclude that respondents correctly challenged probable cause, the district court properly applied the law, and the district court did not err by concluding that the evidence was insufficient to establish probable cause on the charged offenses, we affirm.

## FACTS

Respondent Mary Flicek (Flicek) was the part-time clerk-treasurer for the city of Elko for more than 23 years. Flicek prepared and presented to the city council each year a list that included, among other things, the names of city residents with delinquent utility accounts and the amount owed by each. Under Elko City Ordinance 11, the preparation of the list was permissive rather than mandatory.

From this list, the city then certified the delinquent accounts of its residents to the county auditor pursuant to Minn.Stat. § 444.075, subd. 3 (2002). The effect of certification was to make collection of the delinquent accounts easier for the city because the delinquent account became an assessment payable with a homeowner's property taxes.

Beginning at latest in 1990, Flicek and her husband's home utility account became delinquent.[1] Flicek omitted her delin-

1. Elko was unable to deliver to the Office of the State Auditor ("OSA") any city council

quent utility account from the lists she prepared and presented to the city council. When this was discovered, the delinquent balance on Flicek's account at the end of 1999 totaled $9,849.26.

Respondent Linda Borgen (Borgen) was elected to the Elko City Council in 1995. Flicek and Borgen had been neighbors and friends for approximately 25 years. From 1990 through 1999, Borgen and her husband failed to pay utility bills on their home totaling $3,164.68 and Flicek omitted their names from the lists of delinquent accounts. From 1995 through 1999, Borgen was present at city council meetings during which the delinquent-utility-account resolutions were submitted by Flicek and passed by the council but took no action to add her name to the delinquent accounts list.[2] Consequently, neither Flicek nor Borgen's utility account was certified to the county auditor and amounts owed by both were not added to their property-tax obligation.

In the summer of 2000, an audit of the city of Elko revealed Flicek and Borgen's delinquent utility accounts. The audit was sent to Flicek in June 2000, and it was discussed at a special city-council meeting on June 27, 2000. At this meeting, Flicek told the council that the impending audit report would question the city's collection procedure of delinquent utility accounts. At this time, Flicek and Borgen also disclosed to the council that their accounts were delinquent.

Borgen made sporadic payments on her account from November 1998 through December 1999, but did not bring her account current before the audit. Few, if any, payments were made on Flicek's delinquent balance from 1990 to 1998.[3] Shortly before the audit report was publicly released, both Flicek and Borgen made small payments toward their delinquent accounts. As of July 1, 2000, Flicek still had a delinquent utility account balance of $9,712.18 and Borgen had a delinquent account balance of $2,911.56. By September 5, 2000, Borgen's delinquent account balance had been paid in full. By October 23, 2000, Flicek had also paid the full delinquent amount that she owed the city.

At a July 5, 2000 meeting, the city council suspended Flicek with pay and she ultimately resigned as a city employee. No disciplinary action was taken by the city council against Borgen.

On November 19, 2001, a grand jury returned an indictment alleging that Flicek and Borgen committed felony theft by swindle in violation of Minn.Stat. § 609.52, subds. 2(4), 2(5)(i), 3(2) (2000), and misconduct of a public official or employee in violation of Minn.Stat. §§ 609.43, subd. 4 (2000), and 609.05 (2000).

After the omnibus hearing, the district court dismissed the grand-jury's indictments against Flicek and Borgen. The state appeals the district court's dismissal of the grand-jury indictments under Minn. R.Crim. P. 28.04, subd. 1 (appeal of a pretrial order). On August 14, 2002, this court consolidated the two appeals for briefing, oral argument, and decision. *State v. Flicek and Borgen,* Nos. C2–02–1269, C9–02–1270 (Minn.App. Aug.14, 2002) (order op.). This court also denied

resolutions that might have been prepared before 1991.

**2.** The OSA report also found: (i) the 1996 resolution was seconded by Borgen, (ii) Borgen's name appears as a signature on the face of the 1998 resolution when she was the acting mayor, and (iii) Borgen made the motion to pass the 1999 resolution.

**3.** The first payment listed in the ledger posted to Flicek's account appeared in April 2000 after the completion of the audit report.

two motions by Flicek to dismiss the state's appeal of her case.

## ISSUES

I. Did the district court err as a matter of law by applying the wrong standard to respondents' motion to dismiss the indictment?

II. Did respondents properly challenge the grand-jury indictments?

III. Did the district court err by concluding that the state failed to present sufficient evidence to establish probable cause for the charges of theft by swindle-temporary control and misconduct by a public officer or employee?

## ANALYSIS

 The state appeals a district court order dismissing two indictments against respondents. A district court's order dismissing an indictment is appealable as a matter of right. *State v. Miller*, 471 N.W.2d 380, 383 (Minn.App.1991).

> [T]he standard of review of the dismissal of an indictment is not 'clear and unequivocal error' on the part of the trial court. The proper focus of inquiry is the grand jury's determination of probable cause to believe the alleged offenses occurred, with deference to the grand jury's factfinding role. A presumption of regularity attaches to a grand jury indictment and only in a rare case will an indictment be invalidated.

*State v. Plummer*, 511 N.W.2d 36, 38 (Minn.App.1994) (citations omitted).

### I.

The state first argues that the district court applied a higher probable-cause standard than is required by Minnesota law. The state contends it had no duty to prove that respondents' conduct met all the elements of a criminal statute beyond a reasonable doubt but rather that "upon all of the evidence there is probable cause to believe that an offense has been committed and that the defendant committed it." Minn. R.Crim. P. 18.06, subd. 2.

 It might appear that the district court used a more stringent standard of probable cause here because, in its memorandum, the district court concluded:

> [T]he State is required to prove that defendants have violated the elements of a specific criminal statute before a conviction may be entered. Here, the State simply cannot make that case for the statutes cited in the indictments.

While this is the correct standard before a *conviction* may be entered, the standard for *probable cause* is much lower. Probable cause exists if "evidence worthy of consideration * * * brings the charge * * * within a reasonable probability." *State v. Steinbuch*, 514 N.W.2d 793, 798 (Minn.1994) (quotation omitted).

Even though the district court incorrectly stated the indictment standard for both counts, the error is harmless because the district court's findings support the dismissal of the indictments under the proper standard. Because no evidence of artifice or trick was shown, the district court held that the state had not shown probable cause for theft by swindle. Regarding the charge of misconduct by a public official or employee, the district court held that because the state provided no evidence that the information that Flicek submitted to the city council was "false in any material respect," no crime by either defendant could have been committed.

 The district court made findings of fact that led it to conclude "upon all of the evidence there [was not] probable cause to believe that an offense has been committed." Minn. R.Crim. P. 18.06,

subd. 2. Simply put, if the state cannot present any evidence supporting some elements of the crimes charged, as the district court found, probable cause does not exist. We agree that the evidence presented was insufficient to show that, to a degree of reasonable probability, an offense had been committed or that either of the respondents committed an offense. *See* Minn. R.Crim. P. 18.06, subd. 2; *Steinbuch,* 514 N.W.2d at 798.

## II.

■ The state contends that respondents did not properly challenge the indictments on an evidentiary basis as required by Minn. R.Crim. P. 17.06, subd. 2(1)(a). The state contends that respondents argued that they were innocent of the alleged crimes, rather than claiming that the grand jury lacked admissible evidence to indict.

The state's contention that respondents may not challenge the grand-jury indictments based on lack of probable cause is without merit. A defendant may properly challenge an indictment on the ground that the "evidence admissible before the grand jury was not sufficient * * * to establish the offense charged." Minn. R.Crim. P. 17.06, subd. 2(1)(a). Although the rule does not expressly describe this type of argument as a probable-cause challenge, an attack on the sufficiency of the evidence "to establish the offense charged" is essentially an argument that no probable cause supports the indictments. *Id.* The comments to Rule 17.06 also support the district court's ruling:

> dismissal of an indictment for *lack of admissible evidence showing probable cause* is available because of the requirement of Rule 18.05, subd. 1 that a record

be made of the evidence taken before the grand jury.

Minn. R. Crim P. 17.06 cmt. (emphasis added).

The district court did not err by hearing respondents' probable-cause challenge to the grand-jury indictments. We hold that the district court properly considered respondents' motion to dismiss the indictments based on lack of probable cause.

## III.

The state argues the district court erred by dismissing the grand-jury indictments on the grounds of lack of probable cause.

A. Minn.Stat. § 609.52, subd. 2 (2000), provides in pertinent part:

> Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

> \* \* \* \* \* \*

> (4) by swindling, whether by artifice, trick, device, or any other means, obtains property or services from another person;

> (5) intentionally commits any of the acts listed in this subdivision but with intent to exercise temporary control only and:

> (i) the control exercised manifests an indifference to the rights of the owner or the restoration of the property to the owner[.]

Minn.Stat. § 609.52, subd. 2(4), (5)(i) (2000).[4]

■ Whether the evidence presented by the state supported probable cause depends on the definition of "swindle." The state cites *State v. Ruffin,* 280 Minn. 126, 158 N.W.2d 202 (1968), and two unreported cases in support of its contention that swindle is to be interpreted broadly to

---

**4.** Although respondents were also charged with violations of Minn.Stat. §§ 609.52, subd.

2(4) and 2(5)(i), the parties only addressed the swindling charge under subdivision 2(4).

encompass respondents' failure to report their delinquent accounts. In *Ruffin,* the Minnesota Supreme Court held that the swindling statute was designed to "reach cheats and swindlers of all kinds and descriptions" and that "[n]o single definition can cover the range of possibilities for the offense." *Ruffin,* 280 Minn. 126, 130, 158 N.W.2d 202, 205. The state therefore contends that even if respondents used no fraud to obtain utility services, their actions constituted theft by swindling. *Id.*

We disagree. The Minnesota jury instruction definition of "swindle" states that the essence of the crime "is the cheating of another * * * by a deliberate artifice or scheme." 10 *Minnesota Practice,* CRIM-JIG 16.10 (1999). Black's Law Dictionary defines a "swindler" as "[a] person who willfully defrauds or cheats another." *Black's Law Dictionary* 1010 (7th ed.1991). In addition, the American Heritage Dictionary defines "swindle" as "1. To cheat or defraud, as of money. 2. To obtain by fraud." *American Heritage Dictionary* 1372 (3rd ed.2000).

■■■ Swindling, therefore, requires a showing of affirmative fraudulent or deceitful behavior. Respondents' failure to disclose that their utility accounts were delinquent was an omission and arguably dishonest, but it was not fraudulent. Neither Flicek nor Borgen received utility services by affirmatively misrepresenting anything and did not obtain services by deceit. There is nothing in the record before us, for example, to indicate that the city routinely disconnected water service to those homes with delinquent water-service accounts. Both Flicek and Borgen received the same utility services as other citizens, and all of their billings were accurately noted in the city ledgers. Finally,

the state presented no evidence that Flicek or Borgen made false ledger entries or fraudulently indicated that they paid their utility bills when they had not.

■■■ Furthermore, case law supports the district court's conclusion that, although respondents' actions were reprehensible, they did not commit theft by swindle. Theft by swindle requires the intent to defraud. *See State v. Saybolt,* 461 N.W.2d 729, 735 (Minn.App.1990), *review denied* (Minn. Dec. 17, 1990) (defendant convicted of theft by swindle of more than $35,000 after he set up a foreign shell corporation to which he sold his employer's property). Inherent in the intent requirement is that a swindler must act affirmatively to defraud another. *See, e.g., State v. Matilla,* 339 N.W.2d 54 (1983) (faking burglary, filing false police report, and obtaining more than $2,500 from insurer for personal property constituted theft by swindle); *State v. Hodge,* 266 Minn. 193, 123 N.W.2d 323 (1963) (defendant fraudulently obtaining a driver's license and opening a checking account under a fictitious name and intentionally cashing numerous checks without sufficient funds constituted swindling).

All of the authorities addressing theft by swindle establish that the essence of a swindle is defrauding another person by an intentional misrepresentation or scheme. Here, there were no words or actions; there was only a failure to act by not reporting the delinquent accounts.[5] Although respondents abused their positions of authority by failing to disclose their delinquencies, the facts presented to the grand jury do not constitute probable cause for theft by swindle.

Appellant cited *State v. Kramer,* 441 N.W.2d 502 (Minn.App.1989) at oral argu-

---

5. We leave for another day when and whether omissions or silence may support a theft-by-swindle count. It is sufficient for the result here to note that the parties have not identi-

fied facts which support even a vague claim that there was an intent to defraud on the part of respondents.

ment as support for the theft-by-swindle count. *Kramer* simply does not apply in the present context. Kramer was "deeply involved" in affirmative misrepresentations that induced individuals to invest with his venture; here, respondents have not affirmatively acted fraudulently or deceitfully. *Id.* at 506.[6]

Finally, respondents also argue that they did not commit a crime because the Minnesota Constitution precludes criminalizing the non-payment of debt. Minn. Const. Art. I, § 12;[7] *State v. Larson,* 605 N.W.2d 706 (Minn.2000). Because we hold the district court properly dismissed the theft-by-swindle charge, it is not necessary to decide the issue of whether the Minnesota Constitution precludes punishment for this type of conduct.

B. The state also argues that the evidence presented to the grand jury was sufficient for a finding of probable cause for the charge of misconduct of a public officer or employee under Minnesota Statute § 609.43(4).

Minnesota Statute § 609.43(4) states:

A public officer or employee who does any of the following, for which no other sentence is specifically provided by law, may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both:

\* \* \* \* \* \*

(4) In the capacity of such officer or employee, makes a return, certificate, official report, or other like document having knowledge it is false in any material respect.

Minn.Stat. § 609.43(4) (2000).[8]

 It seems reasonably clear that both respondents were public officials and each was acting within the scope of her duties when the list of delinquent accounts at issue here was prepared. But the real debate centers around whether Flicek violated Minn.Stat. § 609.43(4) by preparing and presenting delinquency lists to the city council knowing they were materially false. Similarly, the state asserts Borgen participated in this falsehood in a material fashion by signing the lists knowing that the

---

**6.** The unpublished cases cited by appellant are also distinguishable from the present facts, and are of persuasive value "[a]t best," and not precedential. *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993). First, in *State v. Shadeko,* the defendant made affirmative misrepresentations of his income in order to remain in public housing. No. C0-00-472, 2000 WL 1809038 (Minn.App. Dec. 12, 2000). Here, respondents did not affirmatively misrepresent anything. In contrast, the city ledger at all times indicated the true delinquent amount on respondents' accounts. Second, appellant cites the dissent in an unpublished and nonprecedential decision, *State v. Rosillo,* C0-00-1610, 2001 WL 881279, at \*3-4 (Minn.App. Jul.31, 2001). But *Rosillo,* too, is not helpful to appellant. The defendant in *Rosillo* was convicted of both a first-degree controlled substance crime and theft by swindle after promising to deliver cocaine for a price and then not delivering it.

*Id.* at \*3. On review, this court held that the two convictions were not inconsistent because there is nothing in the requirement to make an offer to sell that is inconsistent with an intent to swindle. *Id.*

**7.** Minn. Const. art. I, § 12 provides:

No person shall be imprisoned for debt in this state, but this shall not prevent the legislature from providing for imprisonment, or holding to bail, persons charged with fraud in contracting said debt.
Minn. Const. art. I, § 12.

**8.** The state also asserts a violation of Minn. Stat. § 609.45 (Public officer; unauthorized compensation), although the complaint did not charge respondents with a violation of this statute. Because this appears to be a typographical error by appellant's counsel, we will not address § 609.45.

two delinquent accounts at issue here were not listed.

But this is not the whole story. Although Flicek did not include all delinquent accounts in the list forwarded to the city council and it is undisputed that the listed accounts were all delinquent, the state admits that Flicek was not required to list all delinquent accounts, and that she never represented that the list was all-inclusive. Additionally, there is no evidence in the record that there was even an expectation, let alone a usual and customary practice, that the city clerk make a complete list of the delinquent accounts.

Certainly a public officer or employee could submit a document that is "false in any material respect" by omission or non-disclosure, and thus violate the statute. But here, there has been no showing of anything materially false in the list, there was no expectation that the list was complete and, therefore, it was not error for the district court to dismiss the indictments on this charge.

### DECISION

Flicek's failure to report all delinquent utility accounts and Borgen's subsequent approval of resolutions that omitted respondents' accounts did not constitute the offenses of theft by swindle or misconduct by a public officer or employee. Although the district court may have incorrectly recited the probable-cause standard, we find no prejudicial error because the district court's dismissal of the indictment was correct under the appropriate probable-cause standard. Respondents properly challenged probable cause in the district court. Finally, the district court did not err by dismissing the indictments for theft by swindle and misconduct of a public officer or employee. The state's evidence did not establish probable cause that respondents committed theft by swindle because they did not affirmatively act to defraud the city or misrepresent their actions. Similarly, there was insufficient evidence to establish the elements of misconduct of a public officer or employee. Because the state could not demonstrate that the list submitted to the city council and subsequently approved was false in any material respect or that omitting certain information could serve as the basis of a misconduct charge, the court correctly dismissed the indictment.

**Affirmed.**