*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-1323**

State of Minnesota,
Respondent,

vs.

Michael William Schneider,
Appellant.

**Filed July 21, 2014**
**Affirmed**
**Ross, Judge**

Stearns County District Court
File No. 73-CR-11-10974

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Eric Schmidtke, Rogers, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Klaphake, Judge. *

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

Classic car dealership owner Michael Schneider arranged to sell a car on behalf of its owner under a consignment agreement in which Schneider would advertise the car for $29,500 and would accept nothing less than $20,000. Schneider sold the car to a buyer in exchange for two trade-in vehicles and cash that, according to the buyer and to documents that Schneider created, totaled $29,500 in value. But Schneider told the owner that he sold the car for only $20,000, and he paid her based only on that amount. A Stearns County jury found Schneider guilty of theft by swindle, and, because the evidence supports that verdict, we affirm.

## FACTS

A Stearns County jury found Michael Schneider guilty of theft by swindle after hearing evidence describing the following story.

Four years after Jean Mattson's husband passed away in 2006, she decided to sell the 1963 Buick Riviera that he had restored. She wanted $35,000 and turned to a car dealership for help. She met with Michael Schneider, owner of Pan Town Classic Auto. Schneider and Mattson agreed the car was worth about $30,000, and in March 2011, they entered into a consignment agreement that authorized Schneider to sell the car, that prohibited him from selling it for less than $20,000, and that entitled him to a 10% commission on the sale.

Schneider listed the Riviera for $29,500 and a month later found a buyer, David Strand. Strand paid for the Riviera with two trade-in vehicles (a 1963 Chevrolet Corvair

and a 1995 Freightliner) and $11,000 cash. According to dealership records apparently written by Schneider, and to the Riviera's title-transfer form (also completed by Schneider), and to Strand's testimony recounting the deal's particulars, at the time of the Riviera's sale Schneider and Strand valued Strand's two trade-ins at exactly $18,500. Combining the trade-ins and the $11,000 cash exchange, the Riviera sold for the advertised price of $29,500.

But according to Mattson, Schneider did not inform her that the sale price was $29,500. She testified that at the time of the sale Schneider called her and asked whether "[she] would take 20,000 because that's all he could, was able to sell it for." She said that Schneider did not mention receiving cars as part of the sale. Mattson believed that he was representing that all a buyer would pay was $20,000, and she agreed that he could sell it for that amount.

Schneider gave a slightly different version. He said that he called Mattson about the offer initially and told her simply that "it involved some trades." He asserted that Mattson had told him at the outset that, "[t]rades are fine but [I'm not] going . . . to take any vehicles in trade." He says he then asked her if $20,000 was still acceptable, and she said yes. Schneider implied that the circumstances created a simple misunderstanding and that, after his telephone discussion with Mattson, *he* was going to purchase the Riviera from Mattson for $20,000, take a commission from that sale, and then resell the Riviera to Strand for the two trade-in vehicles and the $11,000 cash.

Mattson testified that when she delivered the title to Schneider, Schneider first told her that "there were probably, would be some trades involved, but that was all figured in

3

the selling price." He didn't elaborate on the trade-ins or reveal their value. Because Schneider told Mattson that the price had been $20,000, she expected $18,000 from Schneider, representing the sale price minus Schneider's 10% commission. She signed the title as seller and gave it to Schneider, and Schneider told her to expect her 90% share of the $20,000 about a week later. Schneider filled out the sale information on the back of the title after Mattson left. He did not indicate a purchase price of $20,000; he wrote instead that the "full purchase price" was "$29,500." At some point Schneider also drafted a purchase agreement that reflected a "purchase price" of $29,500 based on trade-in value of $18,500 and an $11,000 cash difference. He did not show Mattson that document. Strand later came to the dealership and signed the title to confirm conveyance to his name, and the sale was complete on May 31.

Strand testified that he bought the Riviera for $29,500, his trade-ins covering $18,500 of that amount and the $11,000 cash making up the difference. Although Strand acknowledged that he might have haggled over the sale price of the Riviera if he had been making a cash-only purchase, he explained that the only haggling that actually occurred was over the value of his trade-in vehicles to determine how much cash he would need to cover the Riviera's $29,500 sale price.

Into June, Schneider still had not paid Mattson the $18,000 she was expecting based on the supposed $20,000 sale, and she began asking Schneider for a copy of the bill of sale and for payment. Schneider did not show her any bill of sale or the purchase agreement, but on June 30 he sent her a check for $6,000 and indicated in the memo line, "6 of 18 thousand." He also gave Mattson a copy of the front of the title that she and

4

Strand had signed, but he did not include a copy of the back of the title, which had stated the sale price of $29,500. Mattson's two daughters became involved, demanding Schneider give their mother the balance owed and a copy of the bill of sale. Finally, in late July, Schneider produced a cashier's check for $12,000 as a final payment.

One of Mattson's daughters contacted police about Schneider's dealings with her mother, and Minnesota State Patrol Lieutenant Jason Hanson went to Schneider's dealership on August 15 to investigate. He spoke with Schneider and found sale documents. Schneider claimed that he had purchased the Riviera from Mattson and then sold it to Strand. He could not explain the $29,500 purchase price written on the title and on the purchase agreement. The jury heard the audio recording of Lieutenant Hanson's discussion with Schneider.

The jury did not hear any evidence about the profit that Schneider made off of the trade-in vehicles because the district court ruled that this evidence was irrelevant. It explained that Schneider could introduce the sales contracts of the trade-ins for other purposes, such as demonstrating that he made a full disclosure to the victim. Schneider never attempted to introduce the contracts at trial, and the jury convicted him.

Schneider appeals.

## DECISION

Schneider asks us to overturn his conviction because the district court erred by prohibiting him from presenting evidence of his actual profit from the Freightliner and Corvair and the trial evidence was insufficient to prove that he intended to deceive Mattson. Neither argument persuades us to reverse.

5

# I

Schneider maintains that the district court erred by prohibiting him from presenting evidence revealing the profit he gained from selling Strand's trade-in vehicles. We will reverse a district court's evidentiary ruling only if it abused its discretion and the ruling prejudiced the defendant. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). The defendant bears the burden to show error and prejudice. *Id.*

Schneider contends that the district court erred by deeming irrelevant the actual profit from the resale of Strand's trade-in vehicles. Evidence is relevant if it makes a material fact more or less probable. Minn. R. Evid. 401. Schneider argues that if the jury had heard the amount of profit he actually received from the trade-ins, it would have been less likely to convict him of theft because the evidence would make it less likely that he intended to swindle Mattson. But a swindler's after-the-fact gain is irrelevant to intent to swindle. *See State v. Lone*, 361 N.W.2d 854, 860 (Minn. 1985) ("In theft by swindle, value becomes irrelevant."). The relevant value is the value of the property taken at the time of the swindle. Minn. Stat. § 609.52, subd. 1(3) (2010). Here, that value is the difference between the actual sale price (as established by documentary evidence created by Schneider and corroborated by the buyer) and the reported, false sale price. So the swindle was complete and its value defined the moment Schneider told Mattson he found a buyer for $20,000, knowing that the actual purchase price was $29,500. The district court did not abuse its discretion by prohibiting Schneider from presenting evidence of the profit or loss in the eventual resale of the two trade-in vehicles.

6

## II

Schneider also argues that the state offered insufficient evidence to convict him of theft by swindle. We review claims of insufficiency of evidence by carefully analyzing the record to determine whether the evidence, viewed in the light most favorable to conviction, supports the guilty verdict under the reasonable-doubt standard. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). We assume that the jury found the state's witnesses credible and was unpersuaded by any contrary evidence. *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999).

When at least one element of a conviction was based on circumstantial evidence, we consider the evidence more closely. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). We consider whether the circumstantial evidence was "consistent with the hypothesis that the accused is guilty and inconsistent with any other rational hypothesis except that of guilt." *Id.* (quotation omitted). We apply a two-step analysis to determine whether the circumstantial evidence was sufficient. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). We first identify what circumstances the evidence showed. *Id.* In doing so, we defer to the jury's verdict and assume that the jury accepted only those circumstances consistent with guilt. *Id.* at 598–99. Next, we examine de novo whether the only reasonable conclusion to be drawn from those circumstances is that the defendant is guilty. *Id.* If a different conclusion is reasonable, we reverse. *See id.*

Theft by swindle occurs when a person "obtains property" from another "by swindling, whether by artifice, trick, device, or any other means." Minn. Stat. § 609.52, subd. 2(4) (2010). To support a conviction, the state must show that the property owner

7

relinquished it due to a swindle, the defendant intended to obtain the property, and the defendant's conduct constituted a swindle. *State v. Pratt*, 813 N.W.2d 868, 873 (Minn. 2012). To prove that the defendant's act was a swindle, the state must show intent to defraud and that the defendant engaged in deceitful behavior. *State v. Flicek*, 657 N.W.2d 592, 598 (Minn. App. 2003). Intent generally requires proof by circumstantial evidence, and juries can infer intent by considering a defendant's "words or actions in light of all the surrounding circumstances." *State v. Thompson*, 544 N.W.2d 8, 11 (Minn. 1996).

Schneider asserts that there is no evidence that he intended to deceive Mattson, maintaining that Mattson accepted a lesser price after he disclosed all the details of the transaction. He also seems to assert that the Riviera's selling price was less than $29,500. But the record and the underlying circumstances belie Schneider's arguments. As Schneider's attorney acknowledged at oral argument, the circumstances proved do not countenance any reasonable hypothesis other than guilt.

The jury's verdict teaches that the following circumstances are proved here: Schneider and Mattson signed a consignment agreement in which Schneider would sell Mattson's Buick and receive 10% of the sale price as commission. Schneider told Mattson that "he had a buyer" and that he could sell the car for only $20,000. During that conversation, Schneider never told Mattson about any trade-in vehicles. And even when he later disclosed that the sale involved trade-in vehicles, he announced that the trades were "all figured in[to] the selling price" but never revealed the $18,500 trade-in valuation that he and Strand had bargained for or the $11,000 cash balance. Schneider and Strand made the deal in which both parties unambiguously understood that Strand

8

was purchasing the car for $29,500 in exchange for two vehicles worth $18,500 and for $11,000 in cash. Schneider wrote "$29,500" on the consignment agreement before the sale, and on the purchase agreement and the title afterward. Schneider's claim that he reassured Mattson that the trade-ins were "figured in[to] the selling price" does not help his case. He wrote on the title that "29,500" was the total selling price and an automobile's "selling price" for tax purposes includes the actual value of trade-ins plus any cash payment. *See* Minn. Stat. § 297B.01, subd. 14(a) (2012).

No documents support Schneider's two-transaction theory that he purchased the Riviera from Mattson and then sold it to Strand. He orchestrated Mattson's signing of the title conveyance, with Mattson signing as the designated seller and Strand—not Schneider—as the buyer. The title memorializes only a single sale. Schneider withheld from Mattson and her daughters the relevant sales documents, knowing of their existence and of their indication of the sale price that he and Strand had agreed upon. Then he paid Mattson only $18,000. A reasonable jury would also have understood that Schneider would not have collected the 10% sales commission if he truly thought he had converted to purchaser rather than broker, as he claimed.

These circumstances do not reasonably support an innocent hypothesis. They provide solid footing for the jury's implied finding that Schneider sold the Riviera to Strand on Mattson's behalf for $29,500 but then intentionally misrepresented to Mattson that he had secured a sale price of only $20,000. We do not suggest that Schneider *could not* have become the buyer from Mattson and then, as new owner, the seller to Strand.

9

We conclude only that the record contains no evidence from which a reasonable jury could find that this happened here.

**Affirmed.**