*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1210**


State of Minnesota,
Respondent,

vs.

Philip Lee Carlson,
Appellant.


**Filed July 25, 2016
Affirmed
Bjorkman, Judge**


Hennepin County District Court
File No. 27-CR-14-22054

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Peterson, Judge; and

Rodenberg, Judge.

**UNPUBLISHED OPINION**

**BJORKMAN**, Judge

Appellant challenges his theft-by-swindle conviction, arguing that he should be permitted to withdraw his guilty plea to correct a manifest injustice and is entitled to relief on multiple other grounds.  We affirm.

**FACTS**

On July 30, 2014, appellant Philip Lee Carlson (Carlson) was charged with aiding and abetting theft by swindle of an amount in excess of $35,000.  The charge related to a residential-construction contract Carlson and his wife Virginia Marie Carlson (wife) entered into with B.C. and K.C. (the couple).  The complaint alleged that the couple was planning to build a new home, and found wife through an online search for an architect.  Carlson and wife met the couple in September 2012.  Wife informed the couple that she was an architect and Carlson was a builder with 20 years of experience.  In reality, wife was not licensed; in 1999, the Minnesota Board of Architecture, Engineering, Land Surveying, Landscaping Architecture, Geoscience, and Interior Design ordered her to stop holding herself out as a licensed architect.  And the Carlsons did not advise the couple of a pending criminal case involving a fraudulent request for construction-loan funds.[1]

On October 15, the Carlsons and the couple entered into a construction contract that required the couple to pay a $5,000 deposit.  After signing the contract, the couple obtained a construction loan from Associated Bank, and retained Executive Title to close the loan

---

[1] District court file 27-CR-11-29604.

and disburse the loan proceeds. Wife attempted to obtain variances from the city of Scandia for the construction project. The couple joined in these efforts, and then paid the Carlsons an additional $5,000.

On March 19, the city approved the variance requests. Two days later, the Carlsons informed the couple that they needed more money. The couple refused to make any more payments until the Carlsons provided them with project drawings. Wife agreed to send the drawings the next day, but she did not do so. On March 27, the Carlsons presented the couple with a bill for $21,000. Carlson offered to withdraw the monetary demand if the couple agreed to continue working with them.

On April 3, the couple sent the Carlsons a letter terminating the contract and demanding a refund of the $10,000 they paid or production of the project drawings. Wife responded that the drawings were protected by copyright. Aside from wife's efforts to obtain the variances, the couple received nothing in return for the $10,000 they paid the Carlsons.

After receiving notice that the contract was terminated, Carlson went to Associated Bank to obtain payment from the construction-loan funds. The bank directed him to Executive Title, where the Carlsons subsequently presented a draw request for $179,586. Executive Title informed the couple of the draw request, and refused to pay the Carlsons.

On April 27, 2015, Carlson pleaded guilty to an amended charge of aiding and abetting theft by swindle of an amount in excess of $5,000. The district court stayed imposition of sentence for three years, placed Carlson on probation under the same terms

and conditions of a prior conviction,[2] and made him and wife jointly responsible for $10,000 in restitution for the couple's economic loss. Carlson appeals.

## DECISION

### I. Carlson is not entitled to withdraw his guilty plea based on a manifest injustice.

A court must allow a defendant to withdraw a guilty plea if it is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be valid, a guilty plea must be accurate, voluntary, and intelligent. *Id*. "Assessing the validity of a plea presents a question of law that we review de novo." *Id*. Carlson argues that he is entitled to withdraw his guilty plea because it was inaccurate and involuntary. We address each argument in turn.

#### A. Accuracy

To be accurate, a plea must be supported by a proper factual basis. *Id*. A factual basis is typically established by asking the defendant to express in his own words what happened. *Id*. The accuracy requirement ensures that a defendant does not plead guilty to a crime more serious than he could be convicted of at trial. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994).

A person is guilty of theft by swindle if he obtains property or services from another person by artifice, trick, device, or any other means. Minn. Stat. § 609.52, subd. 2(a)(4) (2012). "The elements of theft by swindle are: (i) the owner of the property gave up

---

[2] In file 27-CR-11-29604, Carlson was convicted of aiding and abetting theft by swindle of an amount in excess of $35,000.

possession of the property due to the swindle; (ii) the defendant intended to obtain for himself or someone else possession of the property; and (iii) the defendant's act was a swindle." *State v. Pratt*, 813 N.W.2d 868, 873 (Minn. 2012). The offense requires both an affirmative act and the intent to defraud another. *State v. Flicek*, 657 N.W.2d 592, 598 (Minn. App. 2003). A person is liable for the crimes of another if he aids, counsels, or conspires with the other person to commit the crime. Minn. Stat. § 609.05, subd. 1 (2012).

At the guilty plea hearing, Carlson and his attorney went over the plea petition and the various rights he was waiving by pleading guilty. The following exchange then took place:

> APPELLANT'S ATTORNEY: Okay. Mr. Carlson, going back to the fall of 2012, specifically September and October of 2012, at that time is it correct that you signed into a contract under your business's name, Architektur?
>
> APPELLANT: Yes.
>
> Q: And you entered into that contract with [the couple].
>
> A: Yes.
>
> Q: And, you at the time were working with your wife, Virginia Carlson, in that line of business.
>
> A: Yes.
>
> Q: And the two of you together, you and Virginia Carlson, signed into a contract to build a home with [the couple].
>
> A: Yes.
>
> Q: Okay. And you understood that . . . Virginia was holding herself out as an architect, correct? And you understood that [the couple] thought she was a licensed architect.

5

A: Yes.

Q: Okay. And you knew that, you were aware that that's what she was doing.

A: Yes.

Q: Now, at the time that you guys entered into this contract with [the couple], you had a pending criminal case against you and your wife, correct?

A: Yes.

Q: And you kind of purposely did not share that information that you had a criminal case pending with [the couple].

A: I did not share that with [the couple].

Q: Okay. And we would agree that this contract was signed, and these meetings took place between you and [the couple], uh, primarily in Hennepin County, correct?

A: Primarily.

Q: Okay. We would have nothing further.

THE COURT: State satisfied?

PROSECUTOR: Just a—I think we have to establish the amount. So you did, in fact, then accept over $5,000 from [the couple] pursuant to the contract that you signed with them?

A: Yes.

PROSECUTOR: And, in fact, it was two $5,000 checks for a total of $10,000 you accepted?

A: Yes. Not at the same time, but—

PROSECUTOR: At different times.

A: (Nodded head up and down.)

6

PROSECUTOR: I think that's sufficient, Your Honor.

THE COURT: All right. Mr. Carlson, I'll accept your plea.

Carlson does not dispute that he obtained $10,000 from the couple, but argues that his guilty plea did not establish the requisite affirmative act or intent to defraud. We are not persuaded.

First, Carlson's plea establishes that he aided wife's affirmative action to defraud the couple. Carlson admitted that wife told the couple that she was a licensed architect. Carlson argues that his failure to correct wife's statement cannot be considered an affirmative action. *See Flicek*, 657 N.W.2d at 598 (holding that a clerk-treasurer's omission of her own name on a list of delinquent utility accounts did not qualify as affirmative fraudulent behavior). We disagree. Wife did not simply fail to provide information—she falsely stated that she was a licensed architect in order to obtain money from the couple. Carlson aided wife's misrepresentation by doing nothing to correct it, and immediately taking the couple's money.[3]

Second, although Carlson's plea colloquy does not directly evidence his intent to defraud, other portions of the record—including the complaint and wife's guilty plea—establish this element. During wife's plea, she admitted that she was ordered to stop holding herself out to the public as a licensed architect and to stop working as an architect.

---

[3] Carlson also argues that Minn. Stat. § 326.03, subd. 2 (2012) allows unlicensed architects to work on single-family dwellings, and therefore wife's assertion that she was an architect was not a misrepresentation. But regardless of whether wife was statutorily authorized to work on a single-family dwelling, the Carlsons knowingly misled the couple through their representation that wife was a licensed architect.

7

Nonetheless, she informed the couple that she was in fact an architect, admitted that she did so in order to obtain money from the couple, entered into the contract, and received $10,000 from the couple. The complaint indicates that the couple received nothing of value for the $10,000 they paid the Carlsons. Although the Carlsons attempted to obtain variances for the construction project, that task was not completed. And the Carlsons refused to provide project drawings to the couple, even after receiving multiple requests to do so.

Our supreme court has held that a "plea petition and colloquy may be supplemented by other evidence to establish the factual basis for a plea." *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012). This includes portions of the record that were not part of the plea hearing itself. *See id.* (grand jury testimony); *State v. Warren*, 419 N.W.2d 795, 799 (Minn. 1988) (sworn complaint of an off-duty police officer); *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) (complaint and photos of the victim's injuries); *Burnell v. State*, 287 N.W.2d 412, 413 (Minn. 1979) (sworn statements and testimony of the victims that had been introduced at earlier hearings). So long as the record contains sufficient evidence to support the conviction, a defendant may not withdraw his guilty plea. *Raleigh*, 778 N.W.2d at 94.

Carlson argues that no caselaw permits a district court to use a codefendant's plea to supplement a defendant's otherwise insufficient guilty plea. Carlson is correct, but we are not persuaded that this undermines the general rule about supplementing a defendant's plea colloquy. The Carlsons' cases were joined, they pleaded guilty during the same hearing, and Carlson acknowledged that he heard and understood everything that took

8

place during wife's plea colloquy. In essence, wife's guilty plea was intertwined with Carlson's guilty plea. And her plea colloquy ensures that Carlson did not plead guilty to a charge that he could not have been convicted of at trial. On this record, wife's testimony that she falsely told the couple that she was an architect in order to obtain money from them, and the complaint's allegations that the couple received nothing in return for the $10,000 they paid the Carlsons, established Carlson's intent to defraud the couple. Because the only two elements disputed by Carlson—affirmative action to defraud and intent to defraud—were established by the complaint and the testimony of Carlson and his wife, we conclude that his guilty plea was accurate.

## B. Voluntariness

"To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement." *Raleigh*, 778 N.W.2d at 96. Courts consider all relevant circumstances to ensure that the defendant did not plead guilty due to improper pressure or coercion. *Id*.

In his supplemental pro se brief, Carlson argues that his guilty plea was involuntary because the district court judge was biased against him and the prosecutor committed misconduct. Both arguments are unavailing.

First, a judge shall disqualify himself from a proceeding where his impartiality might be questioned. Minn. Code Jud. Conduct Rule 2.11(A); Minn. R. Crim. P. 26.03, subd. 14(3) (stating that "[a] judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct"). We presume that judges approach cases with a neutral and objective disposition. *State v. Burrell*, 743 N.W.2d 596, 603 (Minn.

9

2008). When reviewing a judge's decision not to disqualify himself, we examine whether the judge's impartiality could be reasonably questioned by an unbiased person. *In re Jacobs*, 802 N.W.2d 748, 752 (Minn. 2011).

Carlson argues the district court judge was biased because, at the beginning of the guilty plea hearing, the judge noted concern about his ability to be impartial because another judge had recused from the case. But the judge further stated that he had reviewed the file and did not find "any reason why [he] could not be fair and impartial." A judge's familiarity with a case before trial does not constitute a reason to question the judge's impartiality. *See Burrell*, 743 N.W.2d at 603 (stating that opinions formed by judges through current or prior proceedings do not equate to bias unless they display "deep-seated favoritism or antagonism that would make fair judgment impossible" (quotation omitted)). Moreover, Carlson does not explain how the judge's statement about a colleague's recusal had any effect on his decision to plead guilty.

Second, Carlson asserts that the prosecutor "misrepresented the issues" by using "false information" that there was a $10,000 civil judgment against the Carlsons. He describes this as a discovery violation, on the theory that the lack of a recorded civil judgment was exculpatory evidence.[4] Carlson cites no legal authority for this novel

---

[4] Carlson also complains that the state's "misrepresentation" caused the district court to award $10,000 in restitution. This argument ignores the fact that Carlson admitted receiving $10,000 from the couple. *State v. Thole*, 614 N.W.2d 231, 234 (Minn. App. 2000). Moreover, any challenge to the restitution award is untimely. *See* Minn. Stat. § 611A.045, subd. 3(b) (2014) (stating that a defendant may not challenge restitution more than 30 days after receiving written notification of the amount of restitution or the sentencing date, whichever is later).

argument. The existence or nonexistence of a civil judgment is irrelevant to the issue of Carlson's guilt. Carlson admitted receiving $10,000 from the couple under false pretenses. The prosecutor's mistaken reference to a civil judgment does not constitute suppression of material evidence. *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010) (stating that one of the elements of a *Brady* violation is that the evidence was suppressed by the prosecution).

## II. Carlson's other pro se arguments lack merit.

Carlson makes numerous other arguments without citing the law or requesting specific relief. Many arguments restate issues that we have already addressed or otherwise fail to provide a basis for relief.[5] Carlson also asserts that he should be permitted to withdraw his guilty plea because victim K.C. committed perjury, he received ineffective assistance of counsel, and a manifest injustice occurred because his plea agreement was conditional. We disagree.

Carlson first argues that K.C. committed perjury when she testified at sentencing that she and her husband lost $10,000 because of the Carlsons' acts. Carlson cites no evidence; his argument reflects nothing more than his disagreement with K.C.'s victim-impact statement.

---

[5] For example, Carlson argues that he is entitled to relief because the district court did not order a formal presentence investigation, after specifically waiving this right; that he was never informed what the acronym "PSI" stands for; that he was prejudiced when the district court sentenced him to a stay of imposition rather than a stay of execution; and that the couple engaged in a malicious and libelous scam in order to obtain convictions against the Carlsons. Because these arguments lack any factual or legal support, we do not consider them. *State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003) (refusing to consider portions of a pro se brief that contain only argument and are not supported by legal authority or facts in the record).

Second, Carlson asserts that his attorney was ineffective because he failed to: (1) determine whether the couple had a $10,000 civil judgment against the Carlsons, (2) investigate the status of the 1999 order directing wife not to hold herself out as an architect, (3) pursue a defense under Minn. Stat. § 326.03, subd. 2, and (4) adequately prepare for trial. A trial counsel's performance is presumed to be reasonable. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014). To succeed on his claim, Carlson must show that his attorney's representation fell below an objective standard of reasonableness and that, but for the ineffectiveness, he would not have pleaded guilty. *Johnson v. State*, 673 N.W.2d 144, 148 (Minn. 2004).

Carlson does not explain how his attorney's failure to investigate whether the couple had a civil judgment against the Carlsons and the age of the cease-and-desist order constituted deficient representation or impacted his decision to plead guilty. As noted above, the existence or nonexistence of a civil judgment had no effect on the state's case against Carlson. And the Carlsons' criminal acts extended beyond violating the 1999 order. Rather, the affirmative action to defraud was knowingly misleading the couple into believing that wife was a licensed architect in order to obtain money.

Carlson's contention that his attorney did not consider whether he had a defense under Minn. Stat. § 326.03, subd. 2 is not supported by the record. Carlson's signed plea petition acknowledges that he had sufficient time to discuss the case with his attorney, including possible defenses, and that he was satisfied with his representation. Moreover, the fact that Minn. Stat. § 326.03, subd. 2 permits unlicensed architects to work on single-family dwellings would not provide a defense to the allegation that Carlson misled the

couple to believe that wife was a licensed architect.  And Carlson's broad argument that his attorney failed to adequately prepare for trial is not supported by any specific facts.

Finally, Carlson argues that because his guilty plea was conditional, he should be allowed to withdraw his plea.  We disagree.  The plea agreement provided that if Carlson succeeded in his appeal of file 27-CR-11-29604, he would be permitted to withdraw his guilty plea in the present case.  Because we affirmed that conviction in *State v. Carlson*, No. A15-0190 (Minn. App. Mar. 14, 2016), *review denied* (Minn. May 31, 2016), Carlson is not entitled to withdraw his plea on that basis.

**Affirmed.**